DAVID I. BEGELFER & others[1] vs. RICHARD A. NAJARIAN
& another.[2]

Middlesex.  April 9, 1980. — July 18, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Interest. Small Loans. Penalty. Usury. Contract,* Validity. *Consumer
Protection Act,* Availability of remedy.

Default charges are "interest" within the meaning of G. L. c. 271, § 49.
[181-183]
Under G. L. c. 107, § 3, parties are permitted to contract for an amount
of interest greater than twenty per cent so long as the lender complies
with the registration and record-keeping requirements of c. 271, § 49.
[183-186]
It is not required that a loan which violates G. L. c. 271, § 49, be
declared void in the absence of circumstances and conditions which
would cause the integrity of the loan itself to be questionable.
[186-189]
Where the default provision of a promissory note caused the total interest
and charges to exceed twenty per cent a year and the lender had failed
to comply with the requirements of G. L. c. 271, § 49, the appropri-
ate remedy, in the circumstances, was to strike the default provision of
the note.  [189]
In an action under G. L. c. 93A, § 11, against lenders on a promissory
note secured by a junior mortgage on real estate, the defendants were
not shown to be persons engaged in trade or commerce within the
meaning of § 11 where it appeared that their participation in the real
estate transaction underlying the loan was minimal, they had no voice
in negotiating the terms of the loan, they were solicited by other in-
vestors to participate in the loan, and they were not active in the
management of the loan.  [189-191]

---

[1] The other plaintiffs are MacDavis C. Begelfer, Victor Iocco, and In-
man Towne House Realty Corporation.  The plaintiffs are in the business
of purchasing, renting, constructing, and rehabilitating real estate.

[2] The additional defendant is Lillian V. Najarian, the co-payee on the
promissory note.

CIVIL ACTION commenced in the Superior Court on July 27, 1977.

The case was heard by *Ronan, J.,* on motions for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joseph E. Sandler* for the plaintiffs.

*Joseph Saklad* for the defendants.

ABRAMS, J.  The Legislature has provided that any person who charges more than twenty per cent a year for interest and expenses on a loan must register with the Attorney General.[3] Any person who obtains a loan in which the interest

---

[3] In pertinent part, G. L. c. 271, § 49, as amended by St. 1971, c. 368, reads as follows:

"(a) Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment.  For the purposes of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry. . . .

". . . .

"(d) The provisions of paragraphs (a) to (c), inclusive, shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction.  Such notification shall be valid for a two year period and shall contain the person's name and accurate address.  No lender shall publicly advertise the fact of such notification nor use the fact of such notification to solicit business, except that such notification may be revealed to an individual upon his inquiry.  Illegal use of such notification shall be punished by a fine of one thousand dollars.  Such records shall contain the name and address of the borrower,

and expenses exceed twenty per cent a year may request that the loan be declared void by the Superior Court or this court if the lender failed to register with the Attorney General. G. L. c. 271, § 49.

The plaintiffs seek a declaration that a promissory note executed by them is void because the defendants' exercise of their rights under the default provision caused the interest and expenses to exceed twenty per cent a year and the defendants failed to register with the Attorney General. The plaintiffs suggest that, in any event, the amount of damages sought to be recovered from them after default is unconscionable. Lastly, the plaintiffs also contend that violation of G. L. c. 271, § 49, is an unfair and deceptive act which entitles them to damages and attorneys' fees pursuant to § 11 of G. L. c. 93A. The defendants answered, denying that interest and expenses exceeded twenty per cent a year, and counterclaimed for enforcement of the note. Each party filed an affidavit and moved for summary judgment. Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

After hearing the cross-motions for summary judgment, the judge allowed the defendants' motion. He ruled that there was no genuine issue of fact; that the note in question was an enforceable obligation, not in violation of G. L. c. 271, § 49; and that the defendants had not engaged in any unfair or deceptive practice as that term is used in G. L. c. 93A, § 11. Judgment was entered in the amount of $99,522.50.[4] The plaintiffs appealed, and we transferred

_____

the amount borrowed, the interest and expenses to be paid by the borrower, the date the loan is made and the date or dates on which any payment is due. Any such records shall be made available to the attorney general for the purposes of inspection upon his request. Such records and their contents shall be confidential but may be used by the attorney general, or any district attorney with the approval of the attorney general, for the purposes of conducting any criminal proceeding to which such records or their contents are relevant. . . ."

[4] Based on a memorandum submitted by the defendants, the amount of $99,522.50 consists of the following items (computed as of May 11, 1979): (1) $30,000 principal; (2) $18,487.50, a sum equal to seventeen per cent interest on the principal from September 26, 1975, to May 11, 1979; (3) $2,250.00, a sum equal to a fifteen per cent overdue charge on the principal only from September 26, 1975, to March 26, 1976; (4) $37,968.75,

the case on our own motion. We hold that the default pro-
vision of the note does, indeed, violate G. L. c. 271, § 49.
Therefore, we reverse the judgment, which ordered enforce-
ment of the entire note including the default provision. We
agree with the judge that the plaintiffs are not entitled to
relief pursuant to § 11 of G. L. c. 93A, but we do so for dif-
ferent reasons.

We summarize the pleadings. The plaintiffs are in the
business of buying, selling, renting, constructing, and reno-
vating residential properties. On or about September 26,
1973, the plaintiffs executed nine separate notes to various
payees to evidence a total loan of $300,000. The nine notes
were secured by a junior mortgage on real estate located in
Cambridge. The proceeds of the loan were to be used for
the renovation of rental property.

The defendant Richard Najarian owns a pharmacy in
Waltham, at which his wife occasionally works. The defend-
ants were asked to participate in the loan by two of the other
investors; the defendants did not know the plaintiffs. On or
about September 30, 1973, the plaintiffs, as comakers, exe-
cuted a promissory note dated September 26, 1973, payable
to the defendants in the amount of $30,000 with interest
from the date of the note at the rate of fifteen per cent
(15%) a year on the unpaid balance until paid. Principal
and interest were payable in monthly instalments to be ap-
plied first to interest, then to principal. All unpaid balances
were to be paid one year from the date of the note. In addi-
tion, the parties included a provision calling for default
charges.[5] An amendment to the note was executed in Octo-

---

a sum equal to a fifteen per cent overdue charge on principal and interest
from March 26, 1976, to May 11, 1979; and (5) $10,816.25 for attorneys'
fees. (In a separate paragraph, the note provided that "[t]he undersigned
agree to pay upon default all costs of collection including reasonable at-
torneys fees.")

[5] The default provision reads as follows: "At the option of the Holder,
if any installment of principal or interest is not fully paid (or post-marked
when and if submitted by mail) within five days after the due date
thereof, there may be charged an amount equal to five (5%) percent of
the amount of principal and interest overdue; and if any such installment

ber, 1974, extending the time for payment until September 26, 1975, and increasing the interest to seventeen per cent a year.

The plaintiffs did not pay the note when due and failed to make the interest payments from March 26, 1976, to the date of the judgment.[6] The defendants made a written demand for payment of the amount due under the provisions of the note on July 5, 1977, and shortly thereafter the plaintiffs commenced this action. The central issue is the effect to be given the default provision of the note in light of G. L. c. 271, § 49.

1. *General Laws c. 271, § 49.* "The word interest in its usual sense is the compensation fixed by the parties or allowed by law for the use of money or as damages for its detention." *Hayes* v. *Commissioner of Corps. & Taxation*, 261 Mass. 134, 136 (1927). Usury is generally defined as the taking of interest in excess of the rate permitted by law. 45 Am. Jur. 2d Interest and Usury § 2 (1969). 6A A. Corbin, Contracts § 1498, at 677 (1962). *Hopkins* v. *Flower*, 256 Mass. 367, 371-372 (1926). From 1641 to 1867, Massachusetts laws prohibited the taking of usury. See e.g., St. 1783, c. 55; St. 1825, c. 143; St. 1826, c. 27. See generally *Gray* v. *Bennett*, 3 Met. 522, 527-528 (1842). After 1867, Massachusetts had no general usury statute until 1970, although loans at a rate of interest greater than six per cent were required to be in writing. St. 1867, c. 56. See also St. 1898, c. 577 (Small Loans Act).[7]

---

of principal or interest is not fully paid (or post-marked when and if submitted by mail) within ten days after the due date thereof, there may be charged a total amount equal to fifteen (15%) percent of the amount of principal and interest overdue each and every month."

[6] In total, plaintiffs made twelve payments of $350 each, and sixteen payments of $375 each on the note. No principal has been repaid to the defendants according to the record.

[7] This was the first enactment of a Small Loans Act in Massachusetts. In its present form, the Small Loans Act is now codified at G. L. c. 140, §§ 96-113, of the General Laws.

In 1965 the Special Commission on Laws Relative to Loans and Credit declined to recommend passage of a usury law since, in their opinion, existing and recommended legislation in the areas of small loans, home mortgages, retail credit sales, and credit disclosure provided ample protection to borrowers. 1965 House Doc. No. 3915, at 12. However, in 1970, the Governor recommended passage of a usury law to provide an effective tool against organized crime and "the vicious offense of loansharking." Message of the Governor, 1970 House Doc. No. 5439, at 3. *Beach Assocs.* v. *Fauser,* 9 Mass. App. Ct. 386 (1980). General Laws c. 271, § 49, was thereafter enacted by St. 1970, c. 826. The law is designed to protect the necessitous debtor from outrageous demands by lenders. 14 S. Williston, Contracts § 1683 n.17 (3d ed. 1972). *Gray* v. *Bennett, supra* at 527-528. See Goldstock and Coenen, Controlling the Contemporary Loanshark: The Law of Illicit Lending and the Problem of Witness Fear, 65 Cornell L. Rev. 127, 180-184 (1980).

As defined by G. L. c. 271, § 49, "the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan . . . ." The plaintiffs contend that the overdue charges fall squarely within this statutory prohibition. The defendants, on the other hand, argue that the note does not violate § 49 *(a),* because the interest was only seventeen per cent and the default charges are not interest within the meaning of § 49 *(a).* We disagree with the defendants because the all-inclusive language utilized by the Legislature in § 49 brings within its ambit the default provision of the note in issue.

Analogous statutes regulating instalment sales or loans limit the maximum amount to be charged and specifically include or exclude default charges. See G. L. c. 255B, §§ 11, 20 (Motor Vehicle Installment Sales Act); G. L. c. 255D, §§ 9C (12) (4), 20, 21 (Retail Installment Sales

Act); G. L. c. 140, § 114A. Statutes regulating small loans and certain home mortgage loans do not mention default charges specifically, but their language requires that the maximum charge permitted under these statutory provisions include all but specially enumerated items. G. L. c. 140, §§ 90A, 96, 100; *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 289 (1979). See also G. L. c. 140C, § 3 (e) (Truth-in-Lending Act); 12 C.F.R. § 226.8(b) (4) (Federal Truth-in-Lending regulation).[8] We think that the Legislature's decision to employ language similar to the language found in statutes regulating small loans and certain home loans, coupled with the Legislature's failure specifically to exclude default charges from G. L. c. 271, § 49 (*a*), is fatal to the defendants' claim that the note does not violate § 49 (*a*). Our interpretation is consistent with decisions from other jurisdictions interpreting similar statutes. See *State ex rel. Turner* v. *Altoona*, 274 N.W.2d 366, 367 (Iowa 1979); *Watson* v. *Cargill, Inc.*, 573 S.W.2d 35, 42 (Ct. Civ. App. Tex. 1978); *Thrift Funds of Baton Rouge, Inc.* v. *Jones*, 274 So. 2d 150 (La.), cert. denied, 414 U.S. 820 (1973); *Gordon Fin. Co.* v. *Chambliss*, 236 So. 2d 533 (La. App. 1970).

The defendants' next argument is that the contract rate in the note must be enforced because under G. L. c. 107, § 3,[9] it is lawful to contract for any rate of interest except as provided under certain sections of the Small Loans Act, G. L. c. 140. The defendants' premise is correct in so far as it goes. While parties may contract for interest in an amount

---

[8] The principal purpose of truth-in-lending laws is full disclosure of the cost of credit, rather than imposition of a maximum rate. *Mason* v. *General Fin. Co.*, 542 F.2d 1226, 1231 (4th Cir. 1976).

[9] General Laws c. 107, § 3, reads as follows: "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of six dollars on each hundred for a year, but, except as provided in sections seventy-eight, ninety, ninety-two, ninety-six and one hundred of chapter one hundred and forty, it shall be lawful to pay, reserve or contract for any rate of interest or discount. No greater rate than that before mentioned shall be recovered in a suit unless the agreement to pay it is in writing."

greater than twenty per cent, the Legislature has determined that as a matter of public policy persons who charge more than twenty per cent interest must register with the Attorney General. No reason suggests itself why we should not give effect to the legislative policy expressed in G. L. c. 271, § 49, as well as G. L. c. 107, § 3. Reading these statutes together permits parties to contract for an amount of interest greater than twenty per cent so long as the lender complies with the registration and record-keeping requirements of G. L. c. 271, § 49. In the absence of compliance with these requirements, the maximum amount to be charged for interest and expenses on any loan is limited to twenty per cent a year. "If reasonably practicable and there is no positive repugnancy, a rational and workable effect must be given to both statutes, to the end that there may be a harmonious and consistent body of legislation." *Smith* v. *Director of Civil Serv.*, 324 Mass. 455, 458 (1949). Cases relied on by the defendants which suggest that parties may contract for any interest charged without a penalty were decided before the enactment of G. L. c. 271, § 49. See, e.g., *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Co.*, 357 Mass. 653, 658 (1970), and cases cited.

The defendants also contend that there are several policy reasons why we should not construe the late charges as "interest or expenses" for the purposes of the usury statute. They claim it is sound policy to allow imposition of a default charge, particularly since the prior mortgage increased the risk of the loan. Such a policy, they claim, "is a well known incentive to lenders . . . [and] the threat of the late charge serves as incentive to the debtor to make prompt payments." *Sanders* v. *Federal Nat'l Mortgage Ass'n*, 393 F. Supp. 739, 740 (E.D. La. 1975). See *Garrett* v. *Coast & S. Fed. Sav. & Loan Ass'n*, 9 Cal. 3d 731, 739-740 (1973); *In re Tastyeast, Inc.*, 126 F.2d 879, 882 (3d Cir. 1942).

The defendants also cite authority which indicates that a majority of courts in this country do not treat late charges or delinquency payments as interest for the purposes of ascertaining violations of usury statutes. The general rule is that

a provision in a note for default charges or a higher rate of interest after maturity than permitted by law is not considered usurious if adopted in good faith. *Heelan* v. *Security Nat'l Bank*, 73 Misc. 2d 1004, 1008 (N.Y. Dist. Ct. 1973). *Union Bank* v. *Kruger*, 1 Wash. App. 622 (1969). *Randall* v. *Home Loan & Inv. Co.*, 244 Wisc. 623 (1944). 6A A. Corbin, Contracts, § 1503 at 694 (1962). Annot., 28 A.L.R.3d 449 (1969). See *Hayes* v. *First Nat'l Bank*, 256 Ark. 328 (1974). Annot., 63 A.L.R.3d 50 (1975). One early Massachusetts case followed this general rule. *Cutler* v. *How*, 8 Mass. 257 (1811). See *Fisher* v. *Otis*, 3 Pin. 78 (Wis. 1850) (applying Massachusetts law). Under the cases cited above, late charges of a higher rate of interest after maturity do not have to pass muster under usury statutes because the buyer can avoid them by discharging his debt in a timely manner. This argument assumes that persons who do not make timely payments are financially able to do so, but voluntarily choose not to pay.

Even if we assume that the defendants' arguments are sound, the fact remains that the Legislature has chosen not to follow the defendants' logic, and instead has limited to twenty per cent a year the amount which may be charged for interest and all expenses on loans made by lenders who are not registered with the Attorney General. The public policy against usury is clearly a matter for grave legislative concern, see *Gray* v. *Bennett*, 3 Met. 525, 527 (1842), and the wisdom of their choice of remedies is solely their responsibility. *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 371-372 (1979). A lender faced with bad credit risks and inadequate collateral is not helpless to protect himself: he may register with the Attorney General, and then charge more than twenty per cent a year for interest and expenses.

In sum, the Legislature has determined, as it may, that a lender who does not comply with the requirements of § 49 may not charge interest and expenses in excess of twenty per cent a year. Since the default provision in the note causes the total interest and charges to exceed twenty per cent a

year, it violates the legislative policy embodied in G. L. c. 271, § 49, and cannot be enforced.

Alternatively, apart from the statute, we also consider whether the difference between $48,487.50 and $99,522.50 due to the default (see note 4, *supra*) was "so disproportionate to the damages caused to the [defendants] by the [plaintiffs'] breach of the agreement that it amounts to a penalty." *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Co.*, 357 Mass. 653, 658 (1970). See *In re Tastyeast, Inc.*, 126 F.2d 879 (3d Cir. 1942). *Feller* v. *Architects Display Bldgs., Inc.*, 54 N.J. Super. 205 (1959). See also *Clermont* v. *Secured Inv. Corp.*, 25 Cal. App. 3d 766, 769 (1972). *Garrett* v. *Coast & S. Fed. Sav. & Loan Ass'n*, 9 Cal. 3d 731, 738-740 (1973).

In the past, we have set aside a provision by which the contract rate of interest was doubled after default as an unreasonable, unconscionable and oppressive penalty.[10] *deCordova* v. *Weeks*, 246 Mass. 100, 105 (1923). See *Feller* v. *Architects Display Bldgs., Inc., supra* at 213-214. See also *Makletzova* v. *Diaghileff*, 227 Mass. 100 (1917); *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900); *Manhattan Syndicate, Inc.* v. *Ryan*, 14 App. Div. 2d 323, 327-328 (N.Y. 1961). Were we to treat the default charges in this case as "liquidated damages" we would strike the default provision as "unreasonably and grossly disproportionate to the real damages from [the] breach. . . ." *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956).[11]

General Laws c. 271, § 49 (c),[12] provides that any loan at a proscribed rate of interest may be declared void by the

---

[10] The plaintiffs allege that default charges demanded by the defendants, when computed together with the contract rate of interest, made the rate for total interest and expenses charged for the loan fifty-four per cent a year. As computed by the defendants (see note 4, *supra*), interest after default was roughly thirty-two per cent a year.

[11] Damages in such circumstances are limited to actual damages. *Security Safety Corp.* v. *Kuznicki*, 350 Mass. 157, 158 (1966).

[12] Section 49 (c) provides: "Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made."

Supreme Judicial Court or the Superior Court in equity upon the borrowers' petition. The plaintiffs argue that this language requires any loan made in violation of the statute to be declared void. The plaintiffs contend that as a result of the violation of the statute they are relieved of any obligation to pay the defendants.[13] We do not agree.

"Unless no other conclusion is possible from the words of a statute it should not be held to make agreements contravening it totally void." 14 S. Williston, Contracts § 1630A, at 26 (3d ed. 1972). We think the permissive language of § 49 (c) is properly read to empower a court to utilize its full range of equitable powers, including cancellation, in order to reach an appropriate result in each case.

This precise issue was extensively analyzed in the case of *Beach Assocs. v. Fauser*, 9 Mass. App. Ct. 386 (1980). In that case, the loan agreement called for interest at the rate of twenty-four per cent a year, which the trial judge reduced to twenty per cent, the maximum permissible rate allowed by G. L. c. 271, § 49. In affirming the trial judge's order, the Appeals Court held that an "equitable remedy, statutorily expressed in permissive terms, allows a judge to exercise discretion in granting relief, which can include reformation to reduce the excessive rate charged to one that is legally permissible." *Id.* at 389. As the Appeals Court stated, "There is ample authority for the proposition that when the only flaw in a loan is the excessive interest, the amount constituting the excess is to be refunded or credited to the borrower without necessarily voiding the loan." *Beach Assocs. v. Fauser, supra* at 393, and cases cited therein. See 1970 Ann. Survey Mass. Law 128-129.

The plaintiffs' argument that the entire note is void is based on the construction which has been given to similar language in § 103 of the Small Loans Act.[14] See *Bernhardt*

---

[13] Although not expressly stated, the plaintiffs appear to argue that in view of the defendants' violation of the statute they are not required to return the defendants' capital.

[14] General Laws c. 140, § 103, as appearing in St. 1962, c. 351, § 1, provides that "[w]hoever, being duly licensed as provided in section ninety-

v. *Atlantic Fin. Co.,* 311 Mass. 183, 187 (1942) (holding
that a note taken by an unlicensed small loan lender was
void). Ordinarily, "[t]he word 'may' in a statute commonly
imports discretion." *Turnpike Amusement Park, Inc.* v. *Licensing Comm'n of Cambridge,* 343 Mass. 435, 437 (1962),
and cases cited. There is nothing in the language of the
statute or its purpose which suggests that the Legislature intended to limit the court's discretion. In contrast to § 49,
the Legislature has determined that loans made in violation
of the Small Loans Act by unlicensed persons must be declared void. See G. L. c. 140, § 110;[15] *Beach Assocs.* v.
*Fauser, supra* at 392-393. *Cuneo* v. *Bornstein,* 269 Mass.
232, 237 (1929).

---

six . . . violates the provisions of section one hundred shall be punished by
a fine of not more than one thousand dollars or by imprisonment for not
more than one year, or both, and his license may be suspended or revoked
by the commissioner. Any loan made by any person so licensed in viola- .
tion of said section one hundred may be declared void by the supreme
judicial or superior court in equity upon petition by the person to whom
the loan was made." Prior to St. 1962, c. 351, § 1, the statute was not restricted to licensees.

[15] General Laws c. 140, § 110, as amended through St. 1967, c. 196, provides: "Whoever, not being duly licensed as provided in section ninety-six
on his own account or on account of any other person not so licensed,
engages in or carries on, directly or indirectly, either separately or in connection with or as part of any other business, the business of making loans or
buying notes or furnishing endorsements or guarantees, to which sections
ninety-six to one hundred and eleven, inclusive, apply, shall be punished by
imprisonment in the state prison for not more than ten years or in a jail or
house of correction for not more than two and one half years, or by a fine of
not more than ten thousand dollars, or by both such fine and imprisonment.
Any loan made or note purchased or endorsement or guarantee furnished
by an unlicensed person in violation of said sections shall be void. In any
judicial proceedings under said sections the fact that the defendant has
made or assisted in the making of two or more loans of three thousand
dollars or less, upon which there has directly or indirectly been paid or
charged, for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment or other expenses, a sum
which exceeds in the aggregate an amount equivalent to twelve per cent per
annum upon the amount actually received by the borrower, whether such
sum has been paid to or charged by the defendant or paid to or charged by
any other person, shall be prima facie evidence that the defendant has
engaged in and carried on the business of making loans to which sections
ninety-six to one hundred and twelve, inclusive, apply."

We conclude that there is "no apparent legislative intent that a loan in violation of § 49 (*a*) must be declared void in the absence of circumstances and conditions which would cause the integrity of the loan itself to be questionable. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 23 (1980). To view § 49(*a*) differently is to make relief available to borrowers which in many instances will exceed their injuries." *Beach Assocs.* v. *Fauser*, *supra* at 393.

The appropriate remedy in any particular case is arrived at by balancing a number of factors including the importance of the public policy against usury, whether a refusal to enforce the term will further that policy, the gravity of the misconduct involved, the materiality of the provision to the rest of the contract, and the impact of the remedy on the parties' rights and duties. *Town Planning & Eng'r Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745-746 (1976). *Cadillac Auto. Co.* v. *Engeian*, 339 Mass. 26, 30 (1959). *Missouri, Kan. & Tex. Trust Co.* v. *Krumseig*, 172 U.S. 351, 357 (1899). See generally Restatement (Second) of Contracts § 320 (Tent. Draft No. 12, 1977).

In the circumstances of the present case, we think that the proper equitable remedy is to strike the default provision of the note as offensive to the statute.[16] Such a remedy is a proper accommodation between enforcing the public policy underlying the prohibitions of the act and preventing an undeserved windfall to the plaintiffs.

2. *The consumer protection action.* The plaintiffs seek additional relief under the provisions of G. L. c. 93A, § 11, which provides a remedy for "[a]ny person who engages in

---

[16] In a separate provision, the note permits the defendants to recover reasonable attorneys' fees if needed for collection of the note. See note 4, *supra.* The plaintiffs have not asked us to consider attorneys' fees apart from the default provision of the note. However, the validity of the amount of the attorneys' fees is placed in issue by the defendants' request that we enforce all provisions of the note. As we read § 49, the Legislature has determined that an unregistered lender may not recover in excess of twenty per cent for a loan. The twenty per cent must cover all the interest and expenses including the expense of services. Therefore, the assessment of reasonable attorneys' fees must be recomputed.

Begelfer *v.* Najarian.

the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . ."[17] The plaintiffs claim that the defendants were engaged in trade or commerce as those terms are used in G. L. c. 93A, and that a violation of § 49 is "an unfair or deceptive act or practice." The defendants disagree.

The only issue we consider is whether the defendants are persons engaged in trade or commerce. The principal case construing this language is *Lantner* v. *Carson,* 374 Mass. 606 (1978). In that case, we held that the consumer protection statute did not reach strictly private transactions such as the isolated sale of a private home. Based on the distinction in G. L. c. 93A between "a business person and an individual who participates in commercial transactions on a private, nonprofessional basis," *id.* at 610, we concluded that "where the Legislature employed the terms 'persons engaged in the conduct of any trade or commerce,' it intended to refer specifically to individuals acting in a business context," *id.* at 611. See *Young* v. *Joyce,* 351 A.2d 857 (Del. 1975).

The question whether a private individual's participation in an isolated transaction takes place in a "business context"

---

[17] General Laws c. 93A, § 2, as amended by St. 1978, c. 459, § 2, provides:

"(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

"(b) It is the intent of the legislature that in construing paragraph (a) of this section . . . the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

"(c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (the Federal Trade Commission Act), as from time to time amended."

must be determined from the circumstances of each case. To establish a private person's liability under § 11 we assess the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. See *Lantner* v. *Carson, supra.* Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons (as in the sale of a home), and whether the participant played an active part in the transaction. We do not read § 11 as requiring that a commercial transaction must take place only in the ordinary course of a person's business or occupation before its participants may be subject to liability under G. L. c. 93A, § 11.

In view of these criteria, however, we cannot say that the plaintiffs proved that the defendants were "persons engaged in the conduct of any trade or commerce" or that their participation took place in a business context. Significantly, the record indicates that the defendants' participation in the real estate transaction underlying the loan was minimal. The defendants had no voice in negotiating the terms of the loan. The payments were made to an agent and not directly to them. They were solicited by other investors to participate in the loan, and were not active in the management of the loan.[18] The plaintiffs contend that the defendants' pursuit of their contractual and legal remedies requires us to hold that the defendants are "persons engaged in any trade or commerce," suggesting that pursuit of legal remedies indicates such active participation and control over the transaction as to render the defendants liable under § 11. We disagree. A person is not engaged in trade or commerce merely by the exercise of contractual or legal remedies.

---

[18] While there are allegations as to prior loan transactions, we do not know the character of the parties involved, whether the loans were made to friends for personal reasons or were made for business investments. The extent of the defendants' participation in those notes is left to conjecture. Likewise, it is unclear whether the notes were made many years ago or more recently.

The judgment is reversed, and the case is remanded to the Superior Court for proceedings not inconsistent with this opinion.

*So ordered.*