Salinger, Kenneth W., J.
Stone Street Capital, LLC, seeks approval of an agreement by Kevin Freitas to assign future Massachusetts lotteiy prize payments to Stone Street in exchange for a lump sum payment. The Court concludes that the 24.765 percent discount rate reflected in the parties’ contract is usurious and unlawful. It therefore orders that the contract be reformed to increase the lump sum payment to Mr. Freitas so that it reflects a discount rate that does not exceed 20 percent annually.
Mr. Freitas has agreed to sell and assign, and Stone Street has agreed to buy, five annual Massachusetts Lotteiy payments of $14,000 each, beginning with a payment in May 2013 and concluding with a payment in May 2017. Stone Street has agreed to pay $40,000 for those future payments totaling $70,000. The payment offered by Stone Street was calculated by discounting the future lotteiy payments at an annual rate of 24.765 percent. Stone Street has petitioned for approval of the assignment of Mr. Freitas’s future lotteiy payments under G.L.c. 10, §28.[1]
It is unlawful to charge interest of more than 20 percent annually on any “loan of money or other property” unless advance written notice is provided to the Attorney General. See G.L.c. 271, §49(a) and (d). Stone Street makes no claim that it provided such notice.
The proposed assignment is subject to this usuiy statute, even though the parties call their transaction a “sale” of lotteiy prize payments rather than a “loan.” A “loan” includes, among other things, “(d]elivery by one party to and receipt by another party of a sum of money upon agreement, express or implied, to repay it, with or without interest.” Murphy v. Charlestown Sav. Bank, 380 Mass. 738, 745 n.11 (1980), quoting Black’s Law Dictionary 844 (5th ed. 1979). That is exactly what the parties’ contract provides: Stone Street is to pay Mr. Freitas a lump sum now, and he agrees to repay it with interest by assigning to Stone Street his rights to certain future payments by the Massachusetts Lotteiy. The discount rate used to calculate the amount of Mr. Freitas’s lump sum payment will result in Stone Street recovering substantial interest when it receives the five lottery payments assigned to it by Mr. Freitas. Such a transaction “falls squarely within the established meaning of‘loan.’ ” Cf. Commonwealth v. Thompson, 56 Mass.App.Ct. 710, 712 (2002), rev. denied, 438 Mass. 1110 (2003) (holding that buying illegal drugs on credit, under agreement to repay provider with money, is a “loan” transaction).
The parties’ transaction is a “loan of money” within the meaning of the usuiy statute even though it is structured so that interest is calculated by discounting the future lottery payments to determine what amount will be loaned, rather than by starting with a fixed loan amount and adding some percentage to determine future amounts to be repaid. “A discount rate is simply an interest rate used to shrink a future value to its present equivalent, as distinct from swelling a present value to its future equivalent.” Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755, 759 (7th Cir. 2003) (Posnor, J.). Similarly, the fact that the interest on funds advanced to Mr. Freitas will be paid by the Lotteiy Commission, rather than paid directly by Mr. Freitas, does not change the nature of the transaction into something other than a loan of money. The transaction between Stone Street and Mr. Freitas is not a “time sale” of goods, in which a purchase of personal property is financed by a seller and the buyer pays the purchase price over time with interest. Cf. Murphy, 380 Mass. at 749 n. 14, and cases cited therein.
Since the usuiy statute applies, it is unlawful for Stone Street to buy future lotteiy payments where the purchase price reflects a discount rate of more than 20 percent annually. Under G.L.c. 271, §49(c), the Court may either declare the parties’ transaction void or reform their contract “to reduce the excessive rate charged to one that is legally permissible.” Begelfer v. Najarian, 381 Mass. 177, 187 (1980), quoting Beach Assocs., Inc. v. Fauser, 9 Mass.App.Ct. 386, 389 (1980).
The Court concludes that the appropriate remedy in this case is to reform the contract by requiring Stone Street to pay Mr. Freitas more than the $40,000 it had agreed to. Specifically, Stone Street must determine what lump sum payment will result in an effective discount rate of 20 percent annually and pay that higher sum to Mr. Freitas. This will ensure that Stone Street does not keep an “undeserved windfall” in violation of the usury statute. Begelfer, 381 Mass. at *494 189. Mr. Freitas testified under oath that he was aware that Stone Street offered him a payment that reflected a discount rate of 24.765 percent, that he was aware this was very high and would have the effect of substantially reducing the payment he is to receive, and that he nonetheless wanted to assign $70,000 of lotteiy payments that he is to receive over the next five years in exchange for a payment today of only $40,000. The Court concludes that the most equitable way to enforce the usuiy statute under these circumstances is to reform the parties’ contract so that it reflects a lower discount rate, and thus a higher payment to Mr. Freitas, rather than to void the contract.
Although a 20 percent discount rate may seem excessive, the Court has no power to alter the balance struck by the Legislature in G.L.c. 271, §49. Cf. Lowery v. Klemm, 446 Mass. 572, 581 (2006) (courts must respect and follow “a legislative policy judgment” without questioning “whether [the] statute is wise or effective"). One could argue that it is outrageous for a company like Stone Street to charge 20 percent interest on a low-risk loan that will be repaid within five years by the Massachusetts Lotteiy Commission, especially at a time when lenders offer much riskier ten-year mortgage loans on single family homes at interest rates below three percent per year. But the Legislature has not authorized the Court to disapprove assignments of lotteiy payments on the ground that the financial terms are unfair or unreasonable; where the Legislature wants courts to determine whether a discount rate is fair before approving a structured financial arrangement it says so expressly. Compare G.L.c. 10, §28 (court may not approve assignment of lottery prize payments unless it finds that assignor “is of sound mind and not acting under duress” and has obtained independent legal counsel and financial advice), with G.L.c. 231C, §2 (court may not approve transfer of structured settlement payments unless it finds “that the net amount payable to the payee,” after application of discount rate, “is fair, just and reasonable”). The Court may not “read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.” Provencal v. Commonwealth Health Ins. Connector Auth., 456 Mass. 506, 516 (2010), quoting General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), and King v. Viscoloid Co., 219 Mass. 420, 425 (1914).
ORDER
The Court ORDERS that (1) the Sale Agreement between Stone Street Capital, LLC, and Kenneth Freitas is hereby reformed to increase the purchase price to be paid to Mr. Freitas from $40,000 to such higher figure as will result in an effective discount rate of 20 percent annually, (2) Stone Street shall forthwith calculate the purchase price that equates to application of a 20 percent discount rate to the five lotteiy prize payments of $14,000 each that Mr. Freitas is assigning to Stone Street, and (3) within ten days of the date of this order Stone Street shall provide to Mr. Freitas and the Massachusetts Lotteiy Commission, and shall file with the Court, an amended Terms Rider to Sale Agreement that reflects the reformed purchase price and an amended Disclosure Statement showing the higher purchase price and confirming that the reformed price was calculated using an annual discount rate of 20.0 percent.

 The Legislature amended this statute in 2004 to permit such assignments of future lotteiy payments, subject to court review and approval. See St. 2004, c. 149, §23. Before that amendment such assignments were illegal in Massachusetts. See Singer Friedlander Corp. v. State Lottery Comm’n, 423 Mass. 562, 565-567 (1996).