# United States Court of Appeals
## For the First Circuit

No. 12-1302

HARRIET J. BALERNA,

Plaintiff,

v.

CARMEL A. GILBERTI; MELVIN L. LEWIS, individually and as
Executor of the Estate of Helen Lewis; EDWARD F. LEWIS,
individually and as Executor of the Estate of Helen Lewis,

Defendants, Appellees.

JOSEPH J. COPPOLA,

Interested Party, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Robert J. Muldoon, Jr., with whom Matthew C. Moschella,

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

Jessica G. Kelly and Sherin and Lodgen LLP were on brief, for appellant.

Michael J. Markoff for appellees.

February 27, 2013

**HOWARD**, **Circuit Judge**. Joseph Coppola, an attorney, appeals a decision of the United States District Court for the District of Massachusetts admonishing him for unprofessional conduct. Finding no abuse of discretion, we affirm.

## I. Background

This appeal arises from Coppola's behavior during a case in which he made accusations against opposing counsel. To explain the reasons for the district court's admonishment, we briefly review the background of the case. The estate of Helen Lewis held the senior mortgage on a parcel of real property, and Harriet Balerna (whom Coppola would eventually represent) held the junior mortgage. When the mortgagor defaulted, Helen Lewis's husband and executor Melvin Lewis hired an attorney, Carmel Gilberti, to foreclose on the property. In each of two foreclosure auctions, Ruth Drowne placed the highest bid but could not obtain financing, forfeiting $30,000 in deposits she made. The property was eventually sold to Edward Lewis, Melvin's son and another executor of Helen Lewis's estate, who had placed the second highest bid at the second auction. Ruth Drowne then filed suit in Massachusetts state court to set aside the foreclosure sale and retrieve the deposits that she had forfeited. Gilberti successfully defended the suit. After Gilberti received attorneys' fees for defending the suit, the remaining proceeds of the foreclosure sale were equal only to a fraction of Balerna's junior mortgage.

Because the proceeds were so meager, Coppola filed suit on Balerna's behalf in the United States District Court for the District of Massachusetts against Gilberti, Melvin Lewis, and Edward Lewis on four counts:

1. Accounting for the proceeds of the foreclosure sale.

2. Declaratory judgment regarding the parties' rights to those proceeds.

3. Conversion of the proceeds, including unjustified payment of Gilberti's attorney's fees in the Drowne case.

4. Breach of fiduciary duty, again including the payment of Gilberti's attorney's fees.

The defendants filed a motion to dismiss, which the court denied in a minute order. After months of discovery, the case proceeded to a bench trial, at which Coppola questioned Gilberti extensively. Three of Coppola's areas of inquiry are relevant on appeal:

Conversion

The complaint filed by Coppola on behalf of Balerna accused Gilberti of wrongfully converting the foreclosure proceeds by using some of them to defend the Drowne suit, in which Gilberti was sued individually. Despite the caption of that case, however, Drowne had sued Gilberti only in her capacity as the estate's attorney. The mortgage agreement, moreover, clearly allowed the mortgagee to participate in legal proceedings affecting the

-4-

mortgaged property, which undoubtedly included the Drowne suit. Balerna v. Gilberti, 281 F.R.D. 63, 67 (D. Mass. 2012). At the beginning of the trial, the court warned Coppola that he risked being assessed costs if he could not substantiate the conversion allegation. Coppola offered no evidence that the decision to defend the Drowne suit was unjustified; in fact, the costs and fees associated with that suit were less than the $30,000 in forfeited deposits that Drowne was attempting to recover. The court later concluded that Coppola had accused Gilberti of serious misconduct without any evidence.

Usury

In a motion to disqualify Gilberti, as well as in his opposition to the defendants' motion to dismiss, Coppola invoked the Massachusetts criminal usury statute, which prohibits a lender from taking "directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned." Mass. Gen. Laws ch. 271, § 49(a). Based on this statute, Coppola argued that Gilberti's fees were excessive because they exceeded twenty percent of the foreclosure proceeds. On the first day of trial, the court told Coppola that this was a losing argument: "I'll tell you right now, the usury argument is a total nonstarter. I'll look at it, but I have had it argued to me before. It's never worked. It's not going to work

this time either." Nevertheless, Coppola questioned Gilberti in a way that insinuated that she had committed criminal usury:

> Q[:]  Are you aware that [payments made on the loan were] greater -- principal and interest greater than 20 percent per year?
>
> . . . .
>
> MR. COPPOLA:  The cause of action is that the payments were excessive, your Honor.  It is -- as a matter of law, it is illegal to charge more than 20 percent per year.

After much discussion with Coppola, the court cut off this line of questioning:  "[The usury statute] doesn't have anything to do with this witness.  Maybe by analogy you can argue it in your proposed findings, but this is not a claim that you advanced against [Gilberti] or against anyone."

### False Statements

Based on discrepancies between the Lewis estate's records and information that Gilberti provided during discovery, Coppola accused Gilberti at trial of providing false information:  "The fact is, we asked for an accounting of those proceeds.  We were provided false information.  We were provided false information under oath.  We were provided false information as to the answers to interrogatories."  Coppola pressed this attack in his questioning of Gilberti:

> Q[:]  You did file an accounting.  Yes, you did.  But you made false statements, did you not?
>
> . . . .

THE COURT: Very strong words, Mr. Coppola. You better be very careful.

THE WITNESS: I am really tired of your accusations, Joe. I'm going to tell you that right now.

THE COURT: Let's –

THE WITNESS: I'm a good attorney. I've done nothing wrong.

(Whereupon, the witness breaks down.)

After the trial, the court entered judgment for the defendants and issued an order to show cause why Coppola should not be disciplined for the conduct described above. After receiving briefing, the court held that "sanctions are warranted" because of "the heedless and unnecessary damage inflicted on Attorney Gilberti's reputation." Balerna, 281 F.R.D. at 70. The court admonished Coppola under Federal Rule of Civil Procedure 11(b) for his conduct, but it did not impose any sanction beyond the admonishment itself. Coppola appealed.

## II. Analysis

We review for abuse of discretion a decision of the district court imposing sanctions under Rule 11. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990), superseded in part on other grounds by Fed. R. Civ. P. 11(c). As the standard implies, we give deference to the court's decision. Méndez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011). Here, the district court did not abuse its discretion in admonishing Coppola for the

-7-

accusations he made concerning conversion, usury, and false statements.

Conversion

Coppola's claim that Gilberti converted funds was never supported by any evidence; the mortgage agreement clearly permitted Gilberti to spend foreclosure proceeds to defend the Drowne suit, and "any reasonable attorney would have understood that although Gilberti had been named in her individual capacity in the [Drowne] action, her presence as a defendant was related solely to her capacity as the attorney for the Lewis Estate." Balerna, 281 F.R.D. at 67. These facts should have been obvious to Coppola before trial. Nevertheless, Coppola allowed this claim to proceed to judgment while impugning Gilberti's integrity. Coppola claims that sanctions were not warranted because he relied in good faith on In re Hilson, 863 N.E.2d 483 (Mass. 2007), a case in which an attorney was disciplined for sending funds to his client when those funds were supposed to be held in escrow for another party. See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 58 (1st Cir. 1999) ("But though that claim lacked merit, it was not so plainly unmeritorious as to warrant the imposition of sanctions."). Coppola could not reasonably have relied on this case because, unlike the attorney in Hilson, Gilberti had an explicit contractual right to spend the foreclosure proceeds as she did. See Hilson, 863 N.E.2d at 491.

-8-

Usury

Coppola's allegation that Gilberti violated the criminal usury statute was frivolous. Coppola claims that he reasonably relied on two cases, Begelfer v. Najarian, 409 N.E.2d 167 (Mass. 1980), and Focus Investment Associates, Inc. v. American Title Insurance Co., 992 F.2d 1231 (1st Cir. 1993). In Begelfer, the Supreme Judicial Court of Massachusetts ordered the recomputation of attorneys' fees payable under a contract that violated the usury statute for reasons unrelated to attorneys' fees. 409 N.E.2d at 175 n.16. Begelfer has no application here because the usury statute applies to lenders making loans, not to attorneys such as Gilberti, charging fees. As the court pointed out to Coppola, if his interpretation of the usury statute were correct, any attorney charging a one-third contingency fee in a foreclosure matter would be guilty of criminal usury. Focus Investment Associates involved a "consulting fee" associated with a loan, which may have been a pretext for the lender to collect an unlawful amount of interest. 992 F.3d at 1240. Here, there is no question that the payments to Gilberti were legitimate expenses of litigation that benefitted the Lewis estate. Therefore, Coppola could not reasonably have relied on these cases.

False Statements

At trial, Coppola questioned Gilberti about her alleged false statements so aggressively that she broke down on the stand.

Coppola claims that three allegedly false statements justified this questioning. First, Gilberti filed an affidavit in the Drowne suit stating that she had received funds to purchase the foreclosed property from Edward Lewis. In fact, her firm had received about half of the funds, while the estate received the rest. Second, in responding to a request for admission, Gilberti stated that her firm held the foreclosure sale proceeds in escrow. This was not correct. At trial, another attorney for the Lewises explained that he interpreted this request to ask whether Gilberti could account for the proceeds, and that if there was a mistake in the answer, he was responsible. The court appeared to accept this explanation. Third, Gilberti's original accounting credited the estate with a $10,000 payment that was never made. Gilberti corrected the accounting after Coppola pointed it out to her.

In the end, the court apparently decided that Gilberti's statements did not amount to misconduct. Although the court's decision to impose sanctions on Coppola based on these accusations is a closer question than it is for the accusations of conversion and usury, it did not constitute an abuse of discretion; Coppola turned what seemed to be innocent misunderstandings into claims of perjury.

Finally, Coppola makes a blanket challenge to his admonishment under Federal Rule of Civil Procedure 11(b): While the court cited Coppola's conduct at trial as the reason for his

admonishment, Rule 11(b) allows sanctions only for misconduct in presenting "a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it." The rule cannot be used to punish conduct at trial. <u>Lamboy-Ortiz</u> v. <u>Ortiz-Vélez</u>, 630 F.3d 228, 245 (1st Cir. 2010). With respect to Coppola's claims of conversion and criminal usury, his argument misses the mark because he did raise these claims in submissions to the court, and he continued to advocate them during the trial even after clear warnings by the judge. But Coppola appears not to have alleged in "a pleading, written motion, or other paper" that Gilberti made false statements. Although the court was not entitled to impose sanctions for this conduct under Rule 11(b), it would not have been an abuse of discretion for the court to invoke its inherent power to discipline Coppola. <u>See</u> <u>Chambers</u> v. <u>NASCO, Inc.</u>, 501 U.S. 32, 44-45 (1991) ("A primary aspect of [a federal court's discretion to exercise its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). Once the court concluded that the unremitting accusations of falsehoods were groundless, it was entitled to sanction counsel for pressing them. Therefore, no prejudice to Coppola resulted from the district court's reliance on Rule 11(b).

### III. Conclusion

We **<u>affirm</u>** the district court's decision.