BEACH ASSOCIATES, INC. & others[1] *vs.* PETER J. FAUSER & others.[2]

Berkshire.   November 19, 1979. — March 18, 1980.

Present: ARMSTRONG, ROSE, & PERRETTA, JJ.

*Usury. Interest. Small Loans. Practice, Civil,* Complaint. *Contract,* Validity, Reformation, Mistake. *Statute,* Construction. *Words,* "May."

It is not required that a loan which violates G. L. c. 271, § 49, be declared void in the absence of circumstances and conditions which would cause the integrity of the loan itself to be questionable. [388-393]

In an action by plaintiffs seeking a declaration that a loan was void because the interest exceeded twenty per cent a year and the lenders had failed to comply with the requirements of G. L. c. 271, § 49, the judge did not abuse her discretion in refusing to void the loan and in granting relief through reduction of the interest rate specified in the mortgage note. [393-395]

CIVIL ACTION commenced in the Superior Court on December 14, 1977.

The case was heard by *Griffin,* J.

*Roland E. Shaine* for the plaintiffs.

[1] Melvin Kessler, Alfred Kohn and Owen J. Pepe, Jr.

[2] Stanley Weisz, Frank J. Mack and George Weisz.

*William A. Darrin, Jr.,* for the defendants.

*David O. Burbank,* for Albert S. Silverman, intervener.

PERRETTA, J.   The plaintiff borrowers brought an action in the Superior Court pursuant to G. L. c. 271, § 49(*c*), requesting that the judge declare void a loan which they obtained from the defendant lenders.   The defendants extended this loan at a rate of interest which exceeded the limit established by G. L. c. 271, § 49(*a*).   The judge declined to void the loan and entered a judgment reforming the mortgage note by reducing the stated interest rate to the maximum permissible limit.   The plaintiffs argue that the loan was void and that the judge was powerless to reform the mortgage note.   We affirm the judgment.

The parties do not challenge the judge's findings of fact which she made pursuant to Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); further, "[e]verything which was presented to the trial judge is in the record before us, and we decide the case on this record without regard to [her] rulings." *Pilch* v. *Ware,* 8 Mass. App. Ct. 779, 780 (1979). The plaintiff, Beach Associates, Inc. (Beach), is a South Carolina corporation with five stockholders or "partners," three of whom are the individual plaintiffs.   Its business is real estate development, and it has an office in New York. The defendants are residents of New York, and they invest in real estate dealings similar to the one involved here.   In 1973, Beach desired to purchase land in Pittsfield and Charlton as sites for apartments it intended to build.   The plaintiffs entered into negotiations with the defendants, from whom they wished to borrow $100,000 for "bridge" financing with which to purchase the sites and start construction prior to securing long-term financing.   The parties agreed that the defendants would lend the money to Beach and that the plaintiffs would pay one and one-half percent per month interest, plus a finder's fee of one-half percent per month.   The term of the note was three years.   The defendants placed the money in escrow pending their receipt of legal advice concerning the propriety of the interest rate. Most of their business dealings had been in New York,

where the permissible rate was twenty-five percent per annum (N.Y. Penal Law § 190.40 [McKinney 1975]), and they had never entered into a loan in Massachusetts. The defendant Fauser retained a Massachusetts lawyer and asked him to review the mortgage note and mortgage to insure that it was not in violation of the Massachusetts usury provisions. Fauser's counsel advised him that the documents were in compliance with the law.[3] Thereafter, the plaintiffs executed the note and the mortgages on the Pittsfield and Charlton properties and delivered the documents to Fauser, who recorded the mortgages. The money was then released from escrow and delivered to the plaintiffs. The plaintiffs performed their obligations under the note until eight months later, when they were unable to secure long-term financing for their project and stopped making payments. This triggered two events which, while relevant, are not part of this action: the mortgages were foreclosed (although there is an action pending to set aside the foreclosure sales), and Fauser sued his former attorney because of the advice concerning the legality of the rate of interest charged on the loan.[4]

The loan is within the scope of G. L. c. 271, § 49, as amended by St. 1971, c. 368. The interest and expenses charged exceed the permissible limit established by § 49(a), which provides in pertinent part: "[W]hoever in exchange for either a loan of money or other property knowingly contracts for . . . interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum . . . shall be guilty of criminal usury. . . ." Because the

---

[3] Fauser's counsel was allowed to intervene in this action as a defendant. He argues to us that the loan was not void and that the judge was powerless to reform the interest rate intended by the parties. He claimed no appeal from the judgment, and he is, therefore, precluded from asserting this argument. *Brown* v. *Greenblow*, 330 Mass. 88, 90 (1953). However, it is clear that there was no error in the judge's refusal to leave the interest rate at twenty-four percent per year.

[4] The parties did not request that those actions be consolidated with the present suit. See Mass.R.Civ.P. 42(a), 365 Mass. 805 (1974).

parties did not advise the Attorney General of their intention to enter into the transaction, G. L. c. 271, § 49(d), and because the interest rate charged on this loan is not otherwise statutorily regulated, G. L. c. 271, § 49(e), the legal limit of interest allowed on the loan was twenty percent. The statute, in addition to imposing criminal penalties upon the lender pursuant to § 49(a), also provides equitable remedies to the borrower under § 49(c). That paragraph provides that "[a]ny loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the . . . superior court in equity upon petition by the person to whom the loan was made." There is nothing in the record which indicates that criminal proceedings were brought against the defendants, and our sole concern is with the extent of relief available to the plaintiffs in a civil proceeding commenced under § 49(c). We hold that this equitable remedy, statutorily expressed in permissive terms, allows a judge to exercise discretion in granting relief, which can include reformation to reduce the excessive rate charged to one that is legally permissible.

The plaintiffs' main contention is that when the legislative purpose of § 49 is considered,[5] as well as other statutes regulating loans, the permissive language of § 49(c), specifically, "may be declared void," must be construed as mandatory and as meaning "shall be declared void." In effect, they argue that when a borrower establishes that the parties to the loan have not complied with § 49(d), and the interest rate exceeds twenty percent per year, the judge has no choice but to void the transaction in its entirety. However, we can construe permissive language of a statute as mandatory only if it appears that the Legislature intended such an interpretation. See *Brennan* v. *Election Commrs. of Boston,* 310 Mass. 784, 786 (1942); *Young's Court, Inc.* v. *Outdoor Advertising Bd.,* 4 Mass. App. Ct. 130, 134 (1976).

---

[5] There is an indication that § 49 was drafted as a response to "the vicious offense of loansharking." See Message of the Governor, 1970 House Doc. No. 5439, at 3.

The plaintiffs claim that such an intention is apparent when § 49(*c*) is examined with comparable legislation, specifically § 103 of the small loans act, G. L. c. 140, §§ 96-114. They have read cases interpreting the small loans act as construing the permissive phrase contained in § 103, "may be declared void," to be mandatory. Thus, they conclude that § 49(*c*) must also be deemed the equivalent of a mandate so "that there may be a harmonious and consistent body of law," *Randall's Case*, 331 Mass. 383, 386 (1954), on the subject of relief available from usurious loans. It is proper to look to other statutes concerning a similar subject in order to discern whether statutory language is intended to be construed as permissive or mandatory. See Sands, Sutherland Statutory Construction § 57.06, at 421 and § 69.08, at 289 (4th ed. 1973). Our review of the comparable § 103, however, brings us to a conclusion opposite to that reached by the plaintiffs.

The small loans act, G. L. c. 140, §§ 96-114, inclusive, has three purposes: "to prohibit the unlicensed business of making small loans," "to prevent an excessive rate of interest on such loans," *Cuneo* v. *Bornstein*, 269 Mass. 232, 236 (1929), and "to afford those engaged in such business a fair and reasonable return upon the assets." *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 285 (1979). In implementing these goals, § 96 prohibits any person from engaging in the business of making small loans without first obtaining a license, if the amount of the interest and expenses charged exceeds twelve percent per year or the rate established by the Small Loans Regulatory Board under § 100. Section 103, as appearing in St. 1962, c. 351, § 1, provides in pertinent part that "[a]ny loan made by any person so licensed . . . may be declared void by the . . . superior court in equity upon petition by the person to whom the loan was made." In contrast, § 110, as amended by St. 1967, c. 196, states, in pertinent part, that "[a]ny loan made . . . by an unlicensed person . . . shall be void." Both of those sections impose criminal sanctions upon violating lenders in addition to the relief provided to the borrower;

the sanctions contained in § 110 are more severe than those set out in § 103, just as the borrower's civil relief is broader in § 110 than it may be in § 103.  The distinction between the relief available to a borrower from an unlicensed lender and one who is licensed is consistent with the previously cited purposes of small loans regulation.  Where the loan is by an unlicensed lender, the loan itself, and not merely the excessive interest offends the statute in respect to its goal "to prohibit the unlicensed business of making small loans."  The loan is invalid because the lender was precluded by law from making it.  Such a lender cannot profit by his criminal conduct, and he is entitled to no return on his asset.  Where, however, the loan is by a licensed lender, the act has been violated only in respect to its intention "to prevent an excessive rate of interest" on the small loan.  Section 103 allows the court to uphold the basic validity of the loan where the loan itself is inoffensive, and to grant the borrower relief commensurate with his injury.[6]

Our understanding of these provisions is not in contradiction of those cases cited by the plaintiffs in support of their proposition that § 103 has been judicially construed as being mandatory.  All those cases concern unlicensed lenders in the business of making small loans, and the holdings that the loans were void and not voidable are squarely based upon the express mandatory provision of § 110.  *Thomas* v. *Burnce,* 223 Mass. 311, 312 (1916).  *Cuneo* v. *Bornstein,* 269 Mass. at 236-237 (1929).  *Modern Fin. Co.* v. *Holz,* 307

---

[6] Civil relief is also available to the borrower at the administrative level under G. L. c. 140, § 106, which states:  "If a greater rate of interest or amount for expenses than is allowed under sections ninety-six to one hundred and eleven, inclusive, has been paid on any loan to which said sections apply, the person who paid it may file a complaint with the commissioner, [of banks], who may, after a hearing, order such excess amounts refunded, or may make such other order as he may deem necessary.  The filing of the complaint and the decision of the commissioner shall not affect the right of the complainant under section one hundred and three, who may, in an action of contract or suit in equity, recover back the amount of the unlawful interest or expenses, with twice the legal costs, if such action or suit is brought within two years after the time of payment."

Mass. 281, 287 (1940). *Bernhardt* v. *Atlantic Fin. Corp.,*
311 Mass. 183, 187-189 (1942).[7] We find nothing in the leg-
islative purposes, express language, or judicial interpreta-
tion of § 103 which lends support to the plaintiffs' claim that
under § 103 a court must, at the borrower's request, void a
loan on the basis of excessive interest. Our conclusion is
supported by *Shepard* v. *Finance Associates,* 366 Mass. 182,
188 (1974), where the plaintiff argued that her note and
mortgages were void because the defendant was conducting
a "banking business" in violation of G. L. c. 167. In reject-
ing this claim, the court pointed out that c. 167 provides
specific remedies for such a violation, which included fines,
assessment of expenses, and injunctive orders, but was silent
as to the underlying "private transactions." Consequently,
the court was "[u]nwilling to assume that the Legislature
intended to effect such a forfeiture of private contractual
rights. . . . That the Legislature expressly announced that
intention in an analogous but different context confirms our
resolve in this regard. G. L. c. 140, § 110."

On the basis of our discussion above, we construe § 49(*c*)
and its express language as providing a permissive civil

---

[7] We are cognizant of the fact that in *Bernhardt,* 311 Mass. at 187, the
court cited *Cuneo,* 269 Mass. at 236-237, in support of the statement that,
"[t]he word 'void' as employed in § 103 is used in its strict technical
sense." However, we are of the opinion that this reference in *Bernhardt*
to § 103 rather than § 110 is the result of inadvertence or typographical er-
ror. We hold this belief for a number of reasons. The loan there in ques-
tion violated § 110 in the same manner as did the loan in *Modern Finance,*
307 Mass. at 287. This similarity was noted by the *Bernhardt* court, 311
Mass. at 187, which was the same court that decided *Modern Finance.*
Further, *Bernhardt's* supporting citation to *Cuneo* refers the reader to a
discussion of § 110. *Cuneo,* 269 Mass. at 236-237. Furthermore, this
distinction between § 103 and § 110 has been referred to subsequent to
*Bernhardt,* albeit without discussion, in *Skinner* v. *Kapples,* 320 Mass.
269, 270 (1946), *Medeiros* v. *Scarpitti Invest. Corp.,* 349 Mass. 775
(1965), *Commonwealth* v. *Douglas,* 354 Mass. 212, 219 (1968), and
*Shepard* v. *Finance Associates,* 366 Mass. 182, 188 (1974). Finally, the in-
advertence or error is of no legal impact on the remainder of the *Bern-
hardt* opinion or its ultimate conclusion that the loan by the unlicensed
lender was void.

remedy where interest in excess of twenty percent per year is bargained for, charged, or received in violation of § 49(a). The facts that § 49 may have been prompted as a response to "loansharking" and that criminal penalties flow to the lender do not alter our conclusion; criminal sanctions against violating lenders are also contained in §§ 103 and 110. Neither G. L. c. 140, §§ 96-114, nor c. 271, § 49, contains a flat prohibition against the making of a loan; rather, the prohibitions direct themselves to the circumstances and conditions under which the loan is made. We perceive no apparent legislative intent that a loan in violation of § 49(a) must be declared void in the absence of circumstances and conditions which would cause the integrity of the loan itself to be questionable. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 23 (1980). To view § 49(a) differently is to make relief available to borrowers which in many instances will exceed their injuries. There is ample authority for the proposition that when the only flaw in a loan is the excessive interest, the amount constituting the excess is to be refunded or credited to the borrower without necessarily voiding the loan. See *Turney* v. *Roberts*, 255 Ark. 503, 508-510 (1973); *Strauss* v. *Bruce*, 139 Cal. App. 62, 66 (1934); *First Am. Title Ins. & Trust Co.* v. *Cook*, 12 Cal. App. 3d 592, 597-598 (1970); *Guetersloh* v. *C.I.T. Corp.*, 451 S.W. 2d 759, 761 (Tex. Civ. App. 1970); Annot., Reformation of Usurious Contract, 74 A.L.R. 3d 1239 (1976); 6A Corbin Contracts § 1607 at 701-702 (1962); 14 Williston, Contracts § 169B, at 804-806 (3d ed. 1972); Restatement of Contracts §§ 526, 607 (1932).[8]

Having determined that § 49(c) does not mandate a voiding of the loan, we turn to the propriety of the relief given in this case. Section 49(c) is specifically an equitable remedy.

---

[8] As contained in c. 18 of Restatement of Contracts (1932), these sections pertaining to usurious rates of interest have been omitted from further consideration in Restatement (Second) of Contracts for the specified reason that the subject is largely governed by legislation. Restatement (Second) of Contracts c. 14, Reporter's Note at 49 (Tent. Draft No. 12, 1977).

It was within the discretion of the judge, based upon all the facts, circumstances, and conditions surrounding the loan, to void it, to rescind it, to refund, to credit any excessive interest paid, to reform the contract, or to provide any other relief consistent with equitable principles. Cf. *Dzuris* v. *Pierce,* 216 Mass. 132, 135 (1913); *Massachusetts Mut. Life Ins. Co.* v. *Shattuck,* 328 Mass. 561, 562 (1952); *White* v. *White,* 346 Mass. 76, 80 (1963); G. L. c. 106, § 2-302.

The plaintiffs assert a procedural hurdle to the granting of relief beyond declaring the loan void even if the judge had the power, which we hold she did. They argue that the relief granted was broader than that requested and raised by the pleadings. Archaic rules of pleading did require a more strict conformity between the decree and the prayers than is in order under more modern and liberal rules of pleading. *Stratton* v. *Seaverns,* 163 Mass. 73, 76-77 (1895). *Low* v. *Low,* 177 Mass. 306, 311 (1901). However, a judge in equity could always frame proper relief under a general prayer, which falls within the allegations and the nature of the case, and which does not enlarge the scope of relief requested but is consistent with it. The plaintiffs sought relief from excessive interest, and consistent with that request they received relief. *Franklin* v. *Greene,* 2 Allen 519, 524 (1861). *Fordyce* v. *Dillaway,* 212 Mass. 404, 411 (1912). *Powers, Inc.* v. *Wayside, Inc. of Falmouth,* 343 Mass. 686, 694-695 (1962). What the plaintiffs really complain of is not that the judge went too far, but that she did not go far enough. Additionally, we point out that the defendants asserted an affirmative defense in their answer that they did not knowingly violate § 49(*a*) and that the interest rate was the result of erroneous legal advice. The letter from the defendants' then counsel concerning the validity of the rate was attached to the answer as an exhibit. The pleadings sufficiently raised an issue which could be resolved through reformation. Mass.R.Civ.P. 8, 9(b), 365 Mass. 749-751, 751 (1974).

The judge's decision to reform the contract by reducing the interest rate is supported by the facts and law. Refor-

mation is available to parties where there has been a mutual mistake which is material to the instrument and where no rights of third persons are affected. It is of no critical importance whether the mutual mistake is one of fact or law; it is sufficient that it is material and that it is of a type which can be remedied in equity. *Reggio* v. *Warren,* 207 Mass. 525, 534-536 (1911). *White* v. *White,* 346 Mass. at 80; *Dover Pool & Racquet Club* v. *Brooking,* 366 Mass. 629, 632-633 (1975). See Restatement (Second) of Contracts § 293 (Tent. Draft No. 10, 1975). Within the context of the facts presented on this record, we cannot say that reformation was an inappropriate remedy.[9] Cf. *Riss* v. *Imper Realty Corp.,* 355 Mass. 793 (1969); *Sancta Maria Hosp.* v. *Cambridge,* 369 Mass. 586, 595 (1976). The interest rate was agreed upon by all the parties after negotiation; it was known by all the parties that the defendants intended to charge a legal rate of interest; they placed the money in escrow pending the defendants' receipt of professional advice as to the legality of the rate; the plaintiffs never complained about the transaction until after they were unable to secure permanent financing and their project failed. The parties freely entered into this transaction at arms-length in the mistaken belief that the interest rate was proper. Based upon these facts, the judge did not abuse her discretion in refusing to void the loan or by granting relief through reformation of the interest rate specified in the mortgage note.

*Judgment affirmed.*

---

[9] We recognize that reformation is usually applied in situations where there is an underlying agreement which the written contract fails to reflect; but here, obviously, the plaintiffs agreed to pay twenty percent (and then some). The defendants, not having appealed, raise no objection that the reformed instrument does not reflect their intention.