Edward C. FREDERICKS

v.

**Major General Vahan VARTANIAN, Adjutant General: Major General Nicholas J. Del Torto: and Governor Edward J. King.**

**Civ. A. No. 79–2052–Z.**

United States District Court,
D. Massachusetts.

Dec. 16, 1981.

Roderick MacLeish, Jr., Fine & Ambrogne, Boston, Mass., for plaintiff.

Joan C. Stoddard, Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, Edward C. Fredericks, a member of the Massachusetts Army National Guard ("MANG") sues under 42 U.S.C. § 1983 to redress alleged violations of various constitutional and statutory rights in connection with his demotion from First Sergeant to Sergeant First Class. He invokes the Fourteenth Amendment to the United States Constitution and Mass.Gen. Laws ch. 33 § 74(a) in support of his claim for injunctive and declaratory relief and damages. The defendants in the action are

Governor Edward J. King, Commander in Chief of MANG, Major General Vahan Vartanian, Adjutant General of MANG, and Major General Nicholas J. Del Torto. The case is before me on cross motions for summary judgment on Counts I, II and IV of the Complaint.

In Counts I and II plaintiff alleges that his demotion pursuant to Mass.Gen.Laws ch. 33 § 74 violates the due process clause of the Fourteenth Amendment to the United States Constitution; with respect to Count I because the statute grants a commanding officer unfettered discretion and fails to give notice of what constitutes prohibited conduct, and with respect to Count II because the imposition of punishment deprived him of a property right without due process of law. In Count IV, plaintiff alleges that his demotion in the absence of regulations violated Mass.Gen.Laws ch. 33 § 74(a).

The facts underlying the complaint are undisputed. Prior to February 7, 1977 plaintiff held the rank of First Sergeant in MANG and was in command of the 726th Finance Company of the 26th Infantry Division Support Command of MANG. On or about February 6, 1977, at the open house of the 726th Finance Co., defendant Del Torto extensively questioned plaintiff concerning the manner in which he performed his duties. During the course of this questioning, which plaintiff alleges was humiliating and embarrassing, he made an allegedly disrespectful remark. On February 7, 1977, MANG issued an order which demoted plaintiff from First Sergeant to Sergeant First Class for misconduct, pursuant to Mass.Gen.Laws ch. 33 § 74(a). The order also relieved plaintiff from the 726th Finance Company and transferred him to

the 26th Infantry Division Material Management Center in Boston. On August 30, 1977 plaintiff appealed directly to the then Governor of Massachusetts, Michael S. Dukakis, as Commander-in-Chief, under Mass. Gen.Laws ch. 33 § 74(b), contending that appeal to defendant Del Torto would be futile. On January 24, 1978, defendant Del Torto, plaintiff, and their representatives attempted, without success, to resolve the matter. On February 3, 1978, plaintiff appealed to defendant Vartanian, Adjutant General of MANG. On October 30, 1978, plaintiff's appeal was denied.

▮ Counts I and II rest on plaintiff's assertion that his procedural due process rights have been violated. The requirements of procedural due process apply only where there has been a deprivation of an interest encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Webster v. Redmond*, 599 F.2d 793, 796–97 (7th Cir. 1979). Plaintiff contends that his interest in his military rank constituted a valuable property right cognizable under the Fourteenth Amendment.[1] In *Board of Regents v. Roth, supra*, the Court set forth standards for determining which interests are entitled to due process protection. The Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . .
>
> Property interests . . . are created . . . by existing rules or understandings that stem from an independent source such as state law—rules or understandings that

---

1. Insofar as plaintiff is attempting to raise a First Amendment claim in Count I such claim is rejected. In a military context, claims of "vagueness" are to be judged by the same standard as would apply to a criminal statute being so challenged. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). The standard to be applied is whether the plaintiff could reasonably understand that his contemplated conduct is proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). Clearly, plaintiff could have no reasonable doubt that inappropriate statements to a superior would be viewed as unbecoming conduct. *See, e.g., Parker v. Levy, supra*, 417 U.S. at 757, 94 S.Ct. at 2562.

secure certain benefits and that support claims of entitlement to those benefits. *Id.* at 577, 92 S.Ct. at 2709.

■ Subsequent cases have articulated that members of the military have no constitutionally protected property right to be promoted or retained in the military. *Walker v. Alexander,* 569 F.2d 291 (5th Cir. 1978) (National Guard officer had no property right in his commission); *Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974) (Reserve Air Force Officer has no property right in continued employment in the Air Force); *Pauls v. Secretary of the Air Force,* 457 F.2d 294, 297 (1st Cir. 1972) ("military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service..."); *but see Suro v. Padilla,* 441 F.Supp. 14 (D.P.R.1976) (military officers have some property interests in their positions for purposes of determining federal jurisdiction).

■ However, plaintiff contends that his property interest in his military position rests on a claim of entitlement firmly rooted in state law. The key question, therefore, in determining whether Fredericks possessed a property interest in his position lies in an understanding of the term "entitlement". *Webster v. Redmond, supra,* at 799. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), decided the same day as *Roth,* the Court stated that, in evaluating a claim of entitlement, a court must look for "such rules or mutually explicit understandings" as would support such a claim. *Id.* at 601, 92 S.Ct. at 2699; *See also Ashton v. Civiletti,* 613 F.2d 923, 928 (D.C.Cir.1979).

These mutually explicit rules or understandings must be based on more than unilateral expectations. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions". *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). In establishing when an expectation attains the level of a property interest cognizable under the due process clause, courts have looked for a "legitimate re-

liance" (*Perry v. Sindermann, supra,* 408 U.S. at 600, 92 S.Ct. at 2699), "clearly implied promises" (*Ashton v. Civiletti, supra,* at 930), and "affirmative recognition" (*Confederation of Police v. Chicago,* 547 F.2d 375, 376 (7th Cir. 1977)). Where such an entitlement has been found, it has been explicitly created. *See, e.g. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), (statute providing: "An individual in the competitive service *may* be removed or suspended without pay *only* for such cause as will promote the efficiency of the service." [emphasis supplied]); *Ashton v. Civiletti, supra; Crowe v. Lucas,* 595 F.2d 985 (5th Cir. 1979) (statute stating: "All officers elected at the general municipal election..., *shall* qualify and enter upon the discharge of their duties... and *shall* hold their offices for a term of four years and until their successors are duly elected or qualified. [emphasis supplied]).

The law does not recognize claims of entitlement based on state law, as in the instant case, where the claimed rules or understandings are less explicit. In *Confederation of Police v. Chicago, supra,* Chicago patrol officers claimed that the police department's failure to provide certain procedures with respect to departmental actions which adversely affected their positions violated their due process rights. The court found no Illinois law, either statutory, regulatory, or judicial, protecting a Chicago patrol officer from adverse action by the Police Department short of discharge or suspension, and stated that "[a]bsent affirmative recognition in Illinois law of an entitlement to particular job conditions, plaintiff's due process claim must fail." *Id.* at 376; *See also Webster v. Redmond, supra.*

■ Applying this standard to the instant case, plaintiff must show that his expectation that he would not be demoted was explicitly created by state law. This he cannot do. Mass.Gen.Laws ch. 33 § 74(a), on which the plaintiff relies exclusively, provides in relevant part:

Under such regulations as the commander-in-chief may prescribe, any command-

ing officer may, in addition to or in lieu of admonition or reprimand, impose one of the following disciplinary punishments for minor offenses without the intervention of a court-martial: . . .

(2) . . .[R]eduction to the next inferior grade.

Plaintiff contends that the phrase "[u]nder such regulations as the commander-in-chief may prescribe" means that, in the absence of implementing regulations, no demotion may be administered pursuant to the statute. Absent such regulations, he argues, the statute is inoperative and all disciplinary action for minor offenses must be conducted by means of a court-martial.[2] Plaintiff contends that the statute, interpreted in this manner, created an understanding that demotion would not occur except pursuant to regulation. This understanding, he argues, conferred upon him a cognizable property interest in his rank as First Sergeant.

Mass.Gen.Laws ch. 33 § 74 cannot be given such a distorted interpretation. The statute is modeled on Article 15 of the Federal Uniform Code of Military Justice, 10 U.S.C. § 801 *et seq.* That Article entitled "Commanding officer's non-judicial punishment," was enacted to codify the existing inherent authority of commanding officers to discipline their troops and establish a procedural mechanism for military commanders to impose non-judicial punishment for minor offenses without a court-martial. S.Rep.1911, 87th Cong.2nd Sess. (1962).

█ Moreover, Massachusetts law is clear that the word "may" in a statute is a word of permission and not of command. *Cline v. Cline*, 329 Mass. 649, 653, 110 N.E.2d 123 (1953). Massachusetts courts construing Massachusetts statutes have consistently observed this distinction. *See, e.g. Cline v. Cline, supra*, at 652, 110 N.E.2d

123; *Beach Ass. Inc. v. Fauser*, 9 Mass.App. 386, 401 N.E.2d 858. Permissive statutory language is construed as mandatory only where it appears that the legislature intended such an interpretation. *Beach Ass. Inc., supra*, 1980 Mass.App.Ct.Adv.Sh. at 528, 401 N.E.2d 858; *Brennan v. Election Commissioners of Boston*, 310 Mass. 784, 786, 39 N.E.2d 636 (1942). In this case the word "may", in a statute enacted to enable military officers to impose punishment short of court-martial, was intended to authorize the promulgation of regulations in the event they were warranted. Contrary to plaintiff's assertions, the statute does not require that demotions may be made without court-martial only if pursuant to regulations.

Nothing in Mass.Gen.Laws ch. 33 § 74 affirmatively sets forth a legitimate claim of entitlement. Plaintiff has addressed no other regulations which do so. In the absence of such rules or understandings, a protectable property interest has not been established. Accordingly, because both due process counts are predicated on the existence of a property interest, defendants are entitled to summary judgment on Counts I and II.

In the remaining claim, Count IV, plaintiff claims that by demoting him without promulgating the required regulations defendants acted outside the scope of their authority in violation of state law.

█ The right of military officers to discipline their troops has long been recognized. *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953); *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). The discussion of the statutory intent behind Mass.Gen.Laws ch. 33 § 74(a) applies equally with respect to the state count. Mass. Gen.Laws ch. 33 § 74(a) merely establishes a procedural mechanism whereby minor dis-

---

**2.** The parties dispute whether any regulations pursuant to this statute have been actually promulgated. However, their existence is not material. If, as plaintiff contends, there are no regulations which satisfy the statutory requirement, the analysis of the statute contained herein dictates that plaintiff loses. On the other hand, assuming arguendo that such regulations do exist, since plaintiff's constitutional argument is based on their non-existence, the argument would also fail.

ciplinary infractions may be handled short of court-martial. The failure to promulgate regulations pursuant to the statute has no effect on the legitimacy of § 74(a). Because the statute conferred upon any commanding officer an authority to demote, defendant Del Torto was acting within the statutory scope of his authority.[3] Therefore, defendants are entitled to summary judgment on Count IV.

Accordingly, plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment on Counts I, II and IV is granted.

---

**3.** Because I find that defendant Del Torto was acting within the scope of his authority, I need not address the question whether Mass.Gen. Laws ch. 33 § 74(a) confers a private right of action upon Fredericks.