In re Dominga N. TAVARES, Debtor.

Dominga N. Tavares, Plaintiff,

v.

Joseph A. Sprunk, Sr., Defendant
and Third Party Plaintiff,

v.

Robert P. Marks, Third
Party Defendant.

Bankruptcy No. 02–16524–JNF.
Adversary No. 02–1450.

United States Bankruptcy Court,
D. Massachusetts.

July 31, 2003.

Harvey S. Shapiro, Boston, MA, for Debtor/Plaintiff.

Robert N. Brown, Dedham, MA, for Defendant/Third–Party Plaintiff.

Robert P. Marks, Foxboro, MA, for Third–Party Defendant.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

## I. INTRODUCTION

Several matters are before the Court: 1) the Motion for Partial Summary Judgment filed by the Plaintiff, Dominga N. Tavares (the "Plaintiff" or the "Debtor"); 2) the Motion for Summary Judgment filed by the Defendant, Joseph A. Sprunk, Sr. (the "Defendant" or "Sprunk"); 3) the Plaintiff's Motion to Strike Affidavit of Joseph A. Sprunk, Sr. in Support of Defendant's Motion for Summary Judgment; and 4) the "Plaintiff's Motion to Strike Defendant

Creditor's Response to Plaintiff's 'Notice to Admit.'" The Court heard the motions on June 18, 2003 and took the matters under advisement. The main issue presented is whether a mortgage loan made by Sprunk to the Debtor is usurious within the meaning of the Massachusetts usury statute.

The material facts necessary to decide the issue are not in dispute. Accordingly, the matter is ripe for summary judgment. *See* Fed.R.Civ.P. 56 made applicable to this proceeding by Fed. R. Bankr.P. 7056. For the reasons set forth below, the Court shall grant the Plaintiff's Motion for Partial Summary Judgment in part and deny it in part. The Court also shall deny the Defendant's Motion for Summary Judgment. Further, the Court shall grant the Plaintiff's Motion to Strike the Defendant Creditor's Response to Plaintiff's "Notice to Admit" and deny the Plaintiff's Motion to Strike Affidavit of Joseph A. Sprunk, Sr. in Support of Defendant's Motion for Summary Judgment.

## II.   PROCEDURAL BACKGROUND

The Debtor, a widow in her late eighties, filed a voluntary Chapter 13 petition on September 11, 2002. Sprunk, a gentlemen in his early eighties, holds a mortgage on her property located at 17–19 Clarence Street, Roxbury, Massachusetts (the "Roxbury property"). Sprunk's threatened foreclosure sale of her property prompted the Debtor to file a Chapter 13 petition.

On December 10, 2002, the Debtor filed a First Amended Complaint against Sprunk seeking a determination of the validity and amount of his mortgage. The Debtor, in her four count Amended Complaint, averred that the loan made to her by Sprunk violated the Massachusetts Criminal Usury Statute, Mass. Gen. Laws ch. 271, § 49 (West 2000)("G.L. c. 271"), the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2 (West 1997)("G.L. c. 93A"), and the Massachusetts Debt Collection Statute, Mass. Gen. Laws ch. 93, § 49(West 1997).[1] She also

---

1.  Section 49 provides the following:

No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

For the purposes of this section, such collection or attempt to collect shall be deemed unfair, deceptive or unreasonable if:

(a) The creditor communicates, threatens to communicate, or implies the fact of such debt or alleged debt to a person other than the person who might reasonably be expected to be liable therefor, or to an authorized user after the fact if that status is communicated to the creditor in writing, except with the written permission of the alleged debtor. The provisions of this paragraph shall not prohibit a creditor from notifying a debtor of the fact that the creditor may report a debt or alleged debt to a credit bureau or engage an agent or an attorney for the purpose of collecting the debt or alleged debt. For the purposes of this paragraph, the use of language on envelopes indicating that the communication relates to the collection of a debt shall be deemed a communication of such debt or alleged debt.

(b) The creditor communicates directly with the alleged debtor after notification from an attorney representing such debtor that all further communications relative to the debt should be addressed to him.

(c) The creditor communicates with the alleged debtor in such a manner as to harass or embarrass the alleged debtor, including, but not limited to communication at an unreasonable hour, with unreasonable frequency, by threats of violence, by use of offensive language, or by threats of any action which the creditor in the usual course of business does not in fact take.

(d) The creditor communicates with alleged debtors through the use of forms or instruments that simulate the form and appearance of judicial process.

alleged that her loan transaction with Sprunk and Sprunk's attempt to enforce the obligation under the note and mortgage were unconscionable.

Sprunk answered the Amended Complaint and filed a Third Party Complaint against Robert P. Marks ("Marks"), an attorney who represented him in the loan transaction with the Debtor and who was affiliated with the holder of a prior mortgage on the Roxbury property. In his Third Party Complaint, Sprunk requested the Court to order Marks to pay him damages in the event the Court were to enter a judgment in favor of the Debtor and against him. Marks was properly served with the Third Party Complaint and failed to answer. At the June 18, 2003 hearing, the Court entered a default against Marks. For purposes of this decision, the Court shall accept the Debtor's allegations involving Marks's role in the Sprunk loan transaction, as well as in a prior loan transaction, as true.

## III. FACTS

The pleadings, exhibits, and affidavits on file set forth the following undisputed facts.

Approximately twelve and one half years ago, on January 28, 1991, the Debtor borrowed $15,000 from Marcia J. Marks, d/b/a MJM Associates ("MJM") for personal, family or household purposes. According to the Debtor, MJM was represented by Marks, and Marcia Marks is related to Marks.

The note executed by the Debtor in favor of MJM required payments of interest only in the sum of $225 per month and was for a term of one year, with a balloon payment of $15,225 due on February 4, 1992. The MJM note bore interest at the contract rate of 18% per annum, contained a prepayment penalty in an amount equal to three months interest on the amount prepaid, and was secured by a mortgage on the Roxbury property. In connection with the loan, the Debtor paid Marks $1,250 in attorney's fees and paid The Mortgage Source, Inc. and its principal, Peter Mansolillo, $2,000 for a finder's fee. These payments for attorney's fees and a broker's fee totaled 21.6% of the loan principal. According to the Debtor, The Mortgage Source, Inc. was an entity incorporated by Marks in 1989.

The Debtor further alleged that Marks retained the sum of $51.50 from the loan proceeds to record discharges of five prior mortgages on the Roxbury property. Marks, however, failed to record the discharges. Additionally, the Debtor represented that she believed Marks was to record a discharge of an outstanding mortgage in the sum of approximately $6,000, which she originally had obtained from First American Bank for Savings.

According to the Debtor, MJM failed to notify the Massachusetts Attorney General of its intention to engage in transactions otherwise proscribed by G.L. c. 271, § 49 and the interest and expenses charged in conjunction with the MJM loan far exceeded the threshold for criminal usury under G.L. c. 271, § 49. In short, she averred that the MJM loan was not only usurious, but predatory and unconscionable, that it was reasonably foreseeable that she would default on her mortgage payments to MJM in view of her current and expected income from social security and the rental of four of the five units in the Roxbury

Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A.

Mass. Gen. Laws An.. ch.93, § 49 (West 1997).

property,[2] and that MJM made no effort to reasonably assess her ability to repay the obligation, relying instead on its ability to foreclose on the Roxbury property to satisfy her obligations under the MJM note and mortgage.

Approximately twenty months after borrowing money from MJM, at a time when she was in default on her obligation to MJM, the Debtor, on October 2, 1992, borrowed $35,000 from Sprunk. Sprunk, who earned a living as a life insurance salesman, learned of the lending opportunity from Nicholas Palmieri ("Palmieri"), the principal of Mortgage East Financial Corp., a mortgage broker. Sprunk previously had sold Palmieri life insurance and periodically stopped by his office to scout leads for prospective customers. Palmieri knew Marks because Marks was a closing attorney for some of the companies with which he had done business. Palmieri was instrumental in introducing Marks to Sprunk, although he testified at his deposition that he could not recall the precise circumstances under which Sprunk came to be represented by Marks at the closing of the Debtor's refinancing. Palmieri testified that he only spoke with the Debtor over the telephone and had not retained any records concerning Sprunk's loan to her, although he was paid $2,800 as a broker's fee.

The note executed by the Debtor was captioned "Commercial Loan" and bore a contract rate of interest of 18%. The note, which was secured by a mortgage on the Debtor's Roxbury property, was for a term of five years, provided for monthly payments of $735.63, as well as a balloon payment of $15,998.97 due on October 5, 1997.

At the loan closing, Marks disbursed $17,317.50 of the loan proceeds to Marcia

J. Marks to satisfy the MJM obligation. Additionally, he paid himself $900 ($200 for "title examination" and $700 for "document preparation and closing") and paid $2,800 to Mortgage East Financial Corp. ("Mortgage East"). Additionally, at the closing, the Debtor executed an affidavit in which she stated the following:

> The undersigned, in connection with my/our mortgage transaction with Joseph A. Sprunk, Sr. on October 2, 1992, being duly sworn, depose and state as follows . . .
>
> 2. That we have been advised and fully understand that there is a Loan Placement Fee of $2,800.00 due to Mortgage East Financial Corp.
>
> 3. That such a fee has been negotiated between ourselves and Royal Resource Group [sic], and is not attributable either directly, or indirectly, to Joseph A. Sprunk, Sr., or any of its agents, employees, or representatives, and that payment of said Placement fee will be paid directly from the amount of the loan proceeds available to us.

Although Marks disbursed funds to satisfy the MJM mortgage, he waited over two years, until July 14, 1995, to record a discharge of its mortgage. Marks satisfied the Debtor's obligation to the First American Bank for Savings and paid various other obligations owed by the Debtor to, among other creditors, Waltham Fuel, Boston Edison, the Boston Water and Sewer Commission, and Sears. The Debtor received none of the loan proceeds directly.

When the interest and expenses charged in conjunction with the loan made by Sprunk to the Debtor are added together, the interest rate exceeded 20%. Sprunk never notified the Massachusetts Attorney

---

2. The Debtor represented that her adjusted gross income for calendar years 1990, 1991 and 1992 was $5,403, $8,005 and $3,445, respectively.

General of his intention to charge an interest rate in excess of 20%.[3]

The Debtor made payments on the Sprunk loan until November of 1994 at which time she failed to make any further payments. For an eight year period between July of 1994 and April of 2002, Sprunk made no efforts to collect the debt. On April 17, 2002, however, Sprunk, through his counsel, Robert N. Brown, Esq., wrote to the Debtor demanding that she pay $73,742.25 (plus a per diem of $15.20 beginning on April 2, 2002) within fourteen days, failing which he would commence foreclosure proceedings. In a letter dated July 22, 2002, Sprunk revised his demand for payment from the Debtor. After consulting with his accountant, Edmund Milot, he represented to the Debtor that the total amount due as of July 31, 2002 was $64,033.36. After obtaining a judgment from the Land Court, Sprunk advertised a foreclosure sale of the Debtor's Roxbury property for September 12, 2002. As indicated above, the Debtor filed her Chapter 13 petition on September 11, 2002 in response to the imminent foreclosure sale.

On October 1, 2002, Sprunk timely filed a proof of claim in the sum of $65,294.48. Approximately four weeks later, the Debtor, through her attorney, sent a formal written demand for relief under G.L. c. 93A to Sprunk.[4] Sprunk did not respond to the c. 93A demand letter. At the June 18, 2003 hearing, his counsel represented that he believed that responding to the c. 93A letter would violate the automatic stay.

## IV. DISCUSSION

### A. *The Procedural Motions*

The Debtor seeks an order striking the Defendant Creditor's Response to Plaintiff's "Notice to Admit" on the grounds that Sprunk's Response to "Plaintiff's First Notice to Admit Propounded to the Defendant Joseph A. Sprunk and Third

3. Sprunk contends that the fees paid to Marks and Mortgage East should not be included in the interest calculation. Nevertheless, at the June 18, 2003 hearing, his counsel conceded that if those fees are determined to be properly included in the calculation, then the interest rate would exceed 20%.

4. In her c. 93A letter, the Debtor asserted the following conduct on the part of Sprunk was unfair and deceptive:

   a.  entering and then attempting to enforce a usurious loan transaction with the Debtor in violation of Mass.G.L. c. 271, § 49;

   b.  entering and then attempting to enforce a loan that was otherwise unconscionable and predatory;

   c.  siphoning from the loan proceeds, $2,800.00 assertedly [sic] as a "placement fee," an entity (Mortgage East) that played no role in the transaction and provided no services in connection therewith;

   d.  requiring that the Debtor sign a false and fraudulent affidavit regarding the relationship of Mortgage East to the parties and the loan transaction;

   e.  failing to timely record a discharge of the MJM mortgage that had been satisfied with proceeds from the Sprunk loan;

   f.  entering into a loan transaction secured by the borrower's residence under circumstances where you knew or should have known that the Debtor would ultimately be unable to satisfy the terms of the obligation, and default;

   g.  failing to assert any rights under a loan obligation that was accruing interest at a contract rate of 18% for almost seven (7) years, and then insisting that the 88 year old putative obligor pay the entire obligation, including over $43,000.00 in interest, within fourteen (14) days, or be subject to foreclosure on her home of almost fifty (50) years;

   h.  demanding wildly erroneous and unsubstantiated sums—almost $10,000.00 more than a subsequent calculation—in making the threats described in the preceding subparagraph.

Party Defendant Robert P. Marks" was untimely,[5] that Sprunk failed to seek an extension of time within which to file his Response, that the Debtor relied on Sprunk's failure to respond to her requests for admissions contained in her Plaintiff's First Notice to Admit when she filed her Motion for Partial Summary Judgment on April 21, 2003, and that Sprunk failed to comply with MLBR 7036–1(a)(2) in failing to timely respond to the requests for admissions.

█ The Court finds from its review of the record of this proceeding that the Debtor's grounds for her Motion to Strike are both accurate and meritorious. Moreover, Sprunk did not file an opposition to the Debtor's Motion to Strike. In his late-filed Response to the Notice to Admit, he admitted, in material part, the facts set forth in this decision. Accordingly, for the reasons advanced by the Debtor in her motion, the Court grants the Debtor's Motion to Strike Sprunk's Response.

█ With respect to the Plaintiff's Motion to Strike Sprunk's affidavit, the Court denies the Motion. While the Debtor is technically correct that Sprunk made statements in his affidavit "to the best of my knowledge, memory and belief" and that those statements may contravene the requirements of Fed.R.Civ.P. 56(e) to the extent that Sprunk made them based on his belief, as opposed to his personal knowledge, the Court finds that striking Sprunk's affidavit is an overly harsh remedy for any technical and unintentional violation of Rule 56(e).

B. *Summary Judgment Standards*

The Debtor is entitled to summary judgment if "the pleadings, depositions, an-swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c), made applicable to this proceeding by Fed. R. Bankr.P. 7056. In *In re American Spring Bed Mfg. Co.,* 153 B.R. 365 (Bankr.D.Mass. 1993), this Court elaborated on the standards as follows:

> The burden of proof is on the moving party to demonstrate the lack of a genuine issue of material fact. The moving party bears the "initial responsibility" of asserting the basis for this motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the movant is not required to negate his opponent's claim with affidavits or similar materials. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. The movant may discharge his burden by merely "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

> In order to defeat any motion for summary judgment, the opposing party must produce substantial evidence of a genuine dispute as to a material fact. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). "A material issue is one which affects the outcome of the litigation. To be considered 'genuine' for Rule 56 purposes a material issue must be established by 'sufficient evidence supporting the claimed factual dispute … to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"

---

5. The Debtor served her "Notice to Admit" on Sprunk on February 27, 2003. As of April 17, 2003, she had not received a Response from Sprunk. *See* Fed. Civ. P. 36(a) made applicable to this proceeding by Fed. R. Bankr.P. 7036

*Id.* quoting, *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). *In re American Spring Bed Mfg. Co.*, 153 B.R. at 371.

## C. *The Debtor's Motion for Partial Summary Judgment*

■ The Debtor seeks partial summary judgment establishing Sprunk's liability under G.L. c. 271, § 49 and G.L. c. 93A, § 2, as well as his liability for multiple damages under G.L. c. 93A, § 9(3) because he failed, in bad faith, to offer appropriate relief upon her written demand. Resolution of the Debtor's Motion for Partial Summary Judgment depends upon this Court's interpretation of the usury statute and whether Sprunk exhibited bad faith in failing to respond to the Debtor's c. 93A letter or whether that failure was excusable in light of his counsel's belief that such a response would violate the automatic stay.

Section 49 of G.L. c. 271 provides in relevant part the following:

(a) Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, *directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury* and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment. For the purposes of this section *the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry.*

\* \* \* \* \* \*

(c) Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made.

(d) The provisions of paragraph (a) to (c), inclusive, shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction. . . .

(e) The provisions of this section shall not apply to any loan the rate of interest for which is regulated under any other provision of general or special law or regulations promulgated thereunder or to any lender subject to control, regulation or examination by any state or federal regulatory agency.

G.L. c. 271, § 49 (emphasis supplied). In the Debtor's view, a violation of the criminal usury statute constitutes a *per se* violation of the G.L. c. 93A, § 2, which provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are

hereby declared unlawful." She relies upon the following provision of the Code of Massachusetts Regulations in support of her position:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A, § 2 if:
>
> (1) It is oppressive or otherwise unconscionable in any respect; . . .
>
> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection. . . .

Mass. Regs.Code tit. 940, § 3.16. Because the usury statute appears in Chapter 271 of the General Laws, denominated "Crimes Against Public Policy," the Court finds irrefutable the Debtor's position that a violation of G.L. c. 271, § 49 would constitute a violation of G.L. c. 93A, § 2, if her interpretation of § 49 is correct.

■ Because the usury statute expressly refers to both interest *and* expenses which in the aggregate exceed an amount greater than 20% per annum, the Debtor's position that the broker's fee and the attorney's fees should be added to the 18% contract rate set forth in the note and mortgage in favor of Sprunk is supported by the plain language of the statute.

Sprunk, however, relies upon the last section of the statute, i.e., § 49(e), to support his position that the broker's fee is excluded from the interest calculation for purposes of § 49(a). In particular, he argues that, because residential mortgage loans have always been subject to the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667(e) (West 1997), the version of Regulation Z, 12 C.F.R. § 226.4 in effect in 1992 at the time of Sprunk made the loan at issue should govern whether Marks' attorney's fees and the $2,800 payment to Mortgage East should be included in the interest rate calculation.

In summary, the Court is not persuaded by Sprunk's arguments for the following reasons: 1) the loan transaction is not governed by TILA; 2) the policy objectives of the usury statute and TILA are entirely different; and 3) even if TILA were to be relevant, the current version of Regulation Z provides that broker's fees should be included in the finance charge, thereby negating any inference that the prior version of the regulation which failed to specifically include such fees in the finance charge should control.

Because Sprunk was not a "creditor" within the meaning of TILA as his loan to the Debtor was the only mortgage loan he ever made,[6] and because the residential loan transaction did not involve a "dwelling" within the meaning of TILA as the Debtor's Roxbury property contains five

---

**6.** Section 1602 of TILA defines a creditor as follows:

> (f) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors.

15 U.S.C. § 1602(f).

units;[7] TILA is inapplicable to the Sprunk loan. Thus, Sprunk's reliance on G.L. c. 271, § 49(e) is misplaced.

■■■ As the Debtor emphasizes in her Memorandum, the usury statute embodies a policy "designed to protect necessitous debtors from outrageous demands by lenders," *see Begelfer v. Najarian*, 381 Mass. 177, 182, 409 N.E.2d 167 (1980), while the purpose of TILA (and the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws Ann. Ch. 140D, §§ 1–34 (West 1991 & Supp.2001)(the "MCCCDA"), as the courts recognized in *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 123–24 (Bankr. D.Mass.2002), and *Fidler v. Central Cooperative Bank (In re Fidler)*, 226 B.R. 734 (Bankr.D.Mass.1998), is " 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.' " *Maxwell*, 281 B.R. at 123–24 (quoting *Fidler*, 226 B.R. at 736 and § 1601(a) of TILA upon which the MCCCDA is modeled)). Thus, a usurious loan does not necessarily involve a violation of either TILA or the MCCCDA.

Finally, § 226.4 of Regulation Z now provides that "[f]ees charged by a mortgage broker (including fees paid by the consumer directly to the broker or the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge." 12 C.F.R. § 226.4 (as amended at 61 F.R. 49245, September 19, 1996). Thus, the Court concludes that the usury and truth in lending statutes should be construed consistently so that TILA and the MCCCDA do not conflict with the G.L. c. 271, § 49. Accordingly, the Court shall enter an order granting the Debtor's Motion for Partial Summary Judgment as to the violations of the usury statute and G.L. c. 93A, § 2.

■■■ Pursuant to G.L. c. 271, § 49(c), the Court may declare the Sprunk loan void, but is not obligated to do so. The court in, *Beach Assocs., Inc. v. Fauser*, 9 Mass.App.Ct. 386, 401 N.E.2d 858 (1980), rejected a contention that § 49(c) be construed as mandatory. It stated: "we construe § 49(c) and its express language as providing a permissive civil remedy where interest in excess of twenty percent per year is bargained for, charged, or received in violation of § 49(a)." 9 Mass.App.Ct. at 392–93, 401 N.E.2d 858. Thus, it determined that it could fashion an equitable remedy, stating: "[i]t was within the discretion of the judge, based upon all the facts, circumstances, and condition surrounding the loan, to void it, to rescind it, to refund, to credit any excessive interest paid, to reform the contract, or to provide any other relief consistent with equitable principles." *Id.* at 394, 401 N.E.2d 858.

---

**7.** Section 1602 defines dwelling as follows:
(v) The term "dwelling" means a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives.
It defines residential mortgage transaction as follows:
(w) The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.
15 U.S.C. § 1602(v) and (w).

Although the Debtor requested a declaration from this Court that her loan from Sprunk be voided, her counsel, at the June 18, 2003 hearing, conceded that she was not seeking the return of monies in the approximate amount of $25,000 which she had paid to Sprunk. Because her concession on this point is inconsistent with a declaration voiding the obligation in its entirety, the Court shall defer a determination of the appropriate remedy for the violations of G.L. c. 271, § 49(a) and G.L. C. 93A, § 2 until consideration of the merits of the remaining counts of the Debtor's Amended Complaint.

■ The final issue raised by the Motion for Partial Summary Judgment pertains to Sprunk's failure to respond to the Debtor's c. 93A demand letter. Section 9 of G.L.c. 93A provides in pertinent part the following:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. *In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or*

> *employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.* For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper....

G.L. c. 93A, § 9(3).

The Court finds that the existing record does not permit a finding that Sprunk willfully and knowingly violated § 2 of G.L. c. 93A. Because Sprunk represented that he relied upon Marks to prepare all the loan documents, the evidence is insufficient at this time to warrant a finding that he willfully or knowingly made a usurious loan to the Debtor. Indeed, the record permits the inference that Sprunk, like the Debtor, may have been a victim of Marks's predatory loan and business practices. Moreover, the Court finds that although Sprunk's counsel's conduct in failing to respond to the c. 93A letter because of fear of violating the automatic stay imposed by 11 U.S.C. § 362(a) was unjustified, the record does not permit attributing bad faith to Sprunk for his counsel's neglect in failing either to seek a modification of the automatic stay or a ruling from the Court as to whether the stay would preclude Sprunk from responding to the demand letter. Accordingly, the Court shall defer ruling on the issue of multiple damages at this time.

### B. *Sprunk's Motion for Summary Judgment*

Pursuant to his motion, Sprunk seeks summary judgment on his claim for monies owed as detailed in his proof of claim. Because the Court has determined that the loan was usurious and should be either voided or reformed, Sprunk is not entitled to summary judgment with respect to his proof of claim.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter and order granting the Debtor's Motion for Partial Summary Judgment in part and denying the Defendant's Motion for Summary Judgment.

### ORDER

In accordance with the Memorandum dated July 31, 2003, the Court grants the Debtor's Motion for Partial Summary Judgment in part and denies it in part. The Court denies the Defendant's Motion for Summary Judgment. With respect to the procedural motions before the Court, the Court grants the Plaintiff's Motion to Strike Defendant Creditor's Response to Plaintiff's "Notice to Admit" and denies the Plaintiff's Motion to Strike Affidavit of Joseph A. Sprunk, Sr. in Support of Defendant's Motion for Summary Judgment.