material fact witness at trial. MINN.R.PROF. COND. 3.7(a) states:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

It is crystal-clear that Wallrich is a necessary witness on the issues of breach of the Debtor's plan and causation of its damages, because of the relevance of the alleged events just described.[32] The issue as to which he would testify is squarely in contest—indeed, the point was joined by his response, after the Defendants raised it through Crowley's declaration. It has nothing to do with the nature or value of the services he rendered to the Debtor pre- or post-reorganization.

Finally, there is just no record to support the argument that disqualifying F&W would work a substantial hardship on the Chapter 7 estate. F&W defends its utility to the estate on the ground that both Fafinski and Wallrich have an intimate and manifold knowledge of the relevant facts.[33] It also complains that the estate may have to forgo the prosecution of this matter were it disqualified; it cites the alleged complexity of the facts, the estate's lack of means to fund the litigation through successor counsel, and the asserted prospect that no other law firm would undertake the financial risk of the engagement.

The record, however, does not bear out any of these points. As the length of this order suggests, the facts may not be simple—but neither are they incapable of mastery with some reasonable attention. There is no showing that the Plaintiff even tried to enlist other counsel before suing this out, and certainly no proof that another law firm could not or would not take over the litiga-

tion now. One cannot conclude that disqualifying F&W would impose substantial hardship on the estate.

The inherent conflict of credibility between Wallrich's status as advocate and his status as witness, then, is a fourth reason to disqualify his firm.

## CONCLUSION

For the four reasons just recited,

IT IS HEREBY DETERMINED AND ORDERED:

1. Fafinski & Wallrich, P.A., is disqualified from serving as special counsel to the Plaintiff under 11 U.S.C. § 327(e), FED. R.BANKR.P. 2014(a), and MINN.R.PROF.COND. 1.9 and 3.7.

2. Fafinski & Wallrich, P.A., and its attorneys are removed as counsel for the Plaintiff for this adversary proceeding.

In re Donald John TUNNISSEN,
Charlene Joan Tunnissen,
Debtors.

SENTINEL FEDERAL CREDIT
UNION, Plaintiffs,

v.

UNITED STATES of America through Rural Economic and Community Development, Donald John Tunnissen, Charlene Joan Tunnissen, Defendants.

Bankruptcy No. 95–30001.
Adversary No. 95–3007.

United States Bankruptcy Court,
D. South Dakota,
Central Division.

March 4, 1996.

---

32. Because the accusation that makes counsel a witness comes directly from the fact statement of a party-opponent, the prospect of a strategically-driven disqualification motion is more salient on this theory than on the other three. The veneer

of credibility on Crowley's version of events, however, is sufficient to outweigh the concern.

33. Somehow, it escapes counsel that the intimacy is itself the problem, in more ways than one.

James E. Carlon, Pierre, SD, for Debtors.

John S. Lovald, Pierre, SD, Trustee.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

### RE: SUMMARY JUDGMENT MOTION

The matter before the Court is the Motion for Summary Judgment filed by Defendant Rural Economic and Community Development Agency [now known as the Farm Service Agency or FSA] and the responses and briefs related thereto. This is a core proceeding under 28 U.S.C. § 157(b)(2) This decision and accompanying order shall constitute the Court's findings and conclusions under F.R.Bankr.P. 7052. As set forth below more fully, the Court concludes that the Shared Appreciation Agreement between Debtors and the FSA is not an executory

contract that Debtors may reject. Further, the Court concludes that FSA's mortgage lien for any recapture amount under the Shared Appreciation Agreement has priority over Sentinel Federal Credit Union's lien for its secured claim on Debtors' real property. Finally, the Court concludes that the appropriate time to place a final value on the Credit Union's secured claim on Debtors' real property is when the Shared Appreciation Agreement expires on July 26, 1999 or sooner if one of the conditions for termination is met. The value of the Credit Union's secured claim may be estimated earlier for plan purposes and modified later, if necessary.

## I.

As of July 26, 1989, Donald J. and Charlene J. Tunnissen owed FSA a total of $581,801.85 (principal of $445,038.33 and accrued interest of $136,763.52) on four notes. Under a primary loan servicing option offered by FSA, on July 26, 1989, the Tunnissens made another agreement with FSA. FSA modified its claims against the Tunnissens by completely writing down two notes, partially writing down the third note to $82,794.20 for payment over twenty-eight years in exchange for the Tunnissens signing a shared appreciation agreement, and rescheduling the payments over fifteen years on the fourth note for $113,898.30. As security, the Tunnissens gave FSA new mortgages on the same real property that secured the earlier notes. The new mortgages were recorded July 28, 1989.

The Tunnissens signed a Shared Appreciation Agreement on July 26, 1989. In addition to the annual payments due on the two new notes, under the Agreement the Tunnissens agreed to pay FSA an amount according to one of the following payment schedules:

1. Seventy-five (75) percent of any positive appreciation in the market value of the property securing the loan as described in the above security instrument(s) between the date of this Agreement and either the expiration date of this Agreement or the date the [Tunnissens pay] the loan in full, ceases farming or transfers title of the security, if such event occurs four (4) years or less from the date of this Agreement.

2. Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments between the date of this Agreement and either the expiration date of this Agreement or the date [the Tunnissens pay] the loan in full, ceases farming or transfers title of the security, if such event occurs after four (4) years but before the expiration date of this Agreement.

The amount of recapture by [FSA] will be based on the difference between the value of the security at the time of disposal or cessation by [the Tunnissens] of farming and the value of the security at the time this Agreement is entered into. If the [Tunnissens violate] the term of this agreement [FSA] will liquidate after the borrower has been notified of the right to appeal.

Market value of the property security loan(s) $252,040.00

Net recovery value of property securing loan(s) $153,837.00

Amount of write-down $381,611.00

Amount of Account Equity $ N/A

The Agreement provided that it would expire on July 26, 1999 (ten years later). The new mortgage specifically stated that it would secure any amount due under a share appreciation agreement.

FSA credited the Tunnissens' account for $381,611.00 on July 26, 1989. For tax year 1989, the Tunnissens reported this debt forgiveness by FSA.

Sentinel Credit Union (actually its predecessor) had notes from the Tunnissens preceding the Tunnissens' Shared Appreciation Agreement with FSA. These notes were secured only by the Tunnissens' personal property.

On April 30, 1991, the Credit Union renewed its notes with the Tunnissens and took as additional security a mortgage on the Tunnissens' real property, the same real property that had been mortgaged previously to FSA. A year later, the Credit Union consolidated its notes from the Tunnissens into one note and again took a secured inter-

est in the Tunnissens' personal and real property. The Credit Union had a copy of the Tunnissens' Shared Appreciation Agreement with FSA when it made these agreements with the Tunnissens.

On January 4, 1991, FSA agreed to subordinate its mortgage to the South Dakota Conservation Reserve Enhancement Program to the extent of $59,485.23 to allow the Tunnissens to refinance a debt with Prudential Life Insurance and pay taxes.

The Tunnissens did not pay FSA's new notes in full, cease farming, or transfer title of the mortgaged property within four years of the Shared Appreciation Agreement. Therefore, the conditions for the 75% appreciation recapture payment under the Agreement did not materialize. However, the alternative 50% appreciation recapture payment remains viable. The Tunnissens became delinquent on their payments to FSA in 1993.

On January 3, 1995, the Tunnissens filed a Chapter 12 petition. They filed a proposed plan on March 31, 1995. Therein, they proposed to reject the Share Appreciation Agreement with FSA and reamortize FSA's claim over twenty-five years. The plan further presumed that after application of FSA's secured claim on the real property, no equity in the real property would be available to secure the Credit Union's claim. Several objections to the plan were filed. Many of the objections culminated in this adversary proceeding commenced by the Credit Union to determine the extent and priority of liens on Debtors' real property.

In its complaint, the Credit Union asked the Court to declare that the Shared Appreciation Agreement was not an executory contract and that the Credit Union's secured claim was ahead of the payment due FSA under the Shared Appreciation Agreement. The Credit Union also asked that FSA's claim be limited to the amount of the two new notes. Debtors answered that the Shared Appreciation Agreement was an executory contract. FSA denied that the Shared Appreciation Agreement was an executory contract and further claimed that the Credit Union's secured claim is not superior to FSA's claim under the Shared Appreciation Agreement.

After some pre-trial conferences, the Court and counsel determined that material facts were not in dispute and the parties agreed to resolve the adversary by briefs. FSA filed a Motion for Summary Judgment on January 3, 1996. Briefs and responsive briefs were received by January 22, 1996 and the matter was taken under advisement.

## II.

**Nature of the Contract.** An executory contract is a "contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Jenson v. Continental Financial Corp.,* 591 F.2d 477, 481 (8th Cir.1979) (cites therein). Here, it is clear that FSA has performed its obligation by giving Debtors a substantial debt write-down. Debtors already have benefitted by that action. While FSA must release its mortgages when Debtors complete their payments, the release is not an unperformed obligation or condition that would excuse Debtors from making their regular payments. Instead, FSA's release of the mortgages will be the result of Debtors' full performance under the Agreement.

The Court does not consider the tax consequences of the Agreement to be dispositive on whether the Agreement is executory. The tax consequences are imposed by an entity other than the parties to the Agreement and are not a part of the Agreement.

**Priority of Secured Interests.** FSA's mortgage states that it secures any amount due under a shared appreciation agreement. The mortgage was recorded properly and the Credit Union had notice of it when it took its mortgage lien on the same real property. Consequently, FSA's mortgage extends to any amount due under the 50% appreciation recapture payment. Further, the lien for that amount on Debtors' real property is prior to the Credit Union's lien on Debtors' real property.

**Valuation of the Secured Claims.** By the terms of the Shared Appreciation Agreement, the amount of Debtors' 50% appreciation recapture payment to FSA will occur upon expiration of the Agreement or when one of several conditions occurs. Until that event occurs, it is impossible to value precisely FSA's or the Credit Union's secured claims on Debtors' real property. Therefore, those final valuations will have to wait until the agreement expires or one of the conditions occurs.

That is not to say, however, that these values cannot be estimated earlier. Sections 502(c)(1) and 506(a) contemplate such estimated, tailored-to-the-purpose valuations so that the administration of the case will not be delayed. If these estimated values are incorrect, the plan can provide for a revaluation and appropriate modification in the plan payments to FSA and the Credit Union on July 26, 1999 or earlier, if one of the other conditions for the 50% appreciation recapture payment occurs.

Finally, the values of the FSA's and the Credit Union's claims that are secured by real property are to be estimated as of the date of the confirmation hearing, not the petition date. Section 1225(a)(5) requires secured claims to be valued as of the effective date of the plan. In this Circuit, the confirmation hearing date generally is used because it is proximate to the effective date of the plan. *See Ahlers v. Norwest Bank Worthington (In re Ahlers),* 794 F.2d 388, 398 (8th Cir.1986), *rev'd on other grounds,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). That more equity may have existed in the real property on the petition date is not considered when valuing a secured claim for plan treatment.

FSA's Motion for Summary Judgment will be granted by separate order. Assistant U.S. Attorney Lloyd shall prepare an appropriate judgment.