Giles, J.

Introduction

Plaintiff Donald Comstock (“plaintiff’) brought this action against defendants Alex M. Steinbergh (“Steinbergh”) and R. Stanley Bowden (“Bowden”), the trustees of Porter Square Trust (collectively, “defendants”), for equitable relief (Count I), a determination of title (Count II), misrepresentation (Count III), breach of contract (Count IV), negligence (Count V), unjust enrichment (Count VI), and violations of G.L.c. 93Á, §2 (Count VII). The defendants now move to dismiss Counts I, II, and VII of the complaint pursuant to Mass.R.Civ.P. 12(b)(6). After hearing, and for the reasons set forth below, the motion to dismiss is ALLOWED.

Background

The facts are summarized from the complaint, with all reasonable inferences construed in favor of the plaintiff at this stage of the litigation.
This case rises from a real estate transaction entered into by the parties. On or about December 19, 1989, the plaintiff bought a condominium, Unit 11, at 1802 Massachusetts Avenue, Cambridge, Massachusetts (“Property”), from the defendants for $43,500. Pursuant to the terms of the sale, the plaintiff assumed two mortgages from the defendants, a first mortgage in the amount of $29,454 owed to Bank of New England, N.A., and a second mortgage for $2,279 owed to Samuel A. Otis, Jr., by executing a promissory note to the defendants in the sum of $31,733. He made a down payment of $8,700 dollars (twenty per cent of the purchase price) and borrowed the remaining $3,067 needed for the purchase from the defendants pursuant to a Shared Appreciation Promissoiy Note (“Promissoiy Note”), which was secured by a wraparound mortgage (“Wrap-around Mortgage”) on the Property. The Promissoiy Note had an annual interest rate of ten per cent for a three-year term and provided that:
Upon the sale of the premises securing the repayment of this Note . . . the Maker shall pay to the Holder, in addition to the principal and interest set *574 forth above, 48 percent of the net proceeds received from the resale of said premises.[1]
The current market value of the Properly is approximately $220,000, and the plaintiff has paid off all the principal and interest due under both mortgages and the Promissory Note. Nevertheless, the defendants refuse to discharge the Promissory Note and Wrap-around Mortgage until they receive forty-eight per cent of the net proceeds of the sale of the Property or, in the alternative, $65,000. The plaintiff asserts that requiring him to make this payment would violate the criminal usury statute, G.L.c. 271, §49, because the defendants would receive a rate of return on their $3,067 loan well in excess of the twenty per cent maximum rate allowed. Among his other requests for relief, he seeks a declaratory judgment canceling, rescinding, or voiding the Promissory Note and discharging the Wrap-around Mortgage (Count I) and an order quieting title by discharging the Wraparound Mortgage (Count II), as well as damages pursuant to G.L.c. 93A (Count VII).

Discussion

I. Rule 12(b)(6) Standard
Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted. See CM. v. P.R, 420 Mass. 220, 221 (1995). Massachusetts courts review a 12(b)(6) motion to dismiss under “the standard advanced by the United States Supreme Court in Conley v. Gibson: ‘In appraising the sufficiency of the complaint we follow . . . the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief ” Nader v. Citron, 372 Mass. 96, 97-98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Whitinsville Plaza Inc. v. Kotseas, 378 Mass. 85, 89 (1979); Charbonnier v. Amico, 367 Mass. 146, 152 (1975). To survive amotion to dismiss, the complainant need not advance the correct legal theoiy, but merely must provide a “short and plain statement of the claim showing that the pleader is entitled to relief.” Whitinsville Plaza 378 Mass, at 89, quoting Mass.R.Civ.P. 8(a)(1). See also Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Colt, 413 Mass. 66, 71 (1992). Additionally, the court accepts as true all allegations in the plaintiffs complaint, as well as any reasonable inferences drawn therefrom. See Gen. Motors Acceptance Corp. v. Abington Cos. Ins. Co., 413 Mass. 583, 584 (1992); Nader, 372 Mass, at 98.
II. Declaratory Relief Pursuant to G.L.c. 231 A, §1 etseq. (Count I)
A. Ripeness
The defendants contend that the plaintiff s claim for declaratoiy relief is not ripe for adjudication because there is no actual controversy between the parties until the plaintiff sells the Properly. The Uniform Declaratoiy Judgments Act allows courts to “make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings.” G.L.c. 231A, §1. “The purpose of this statute is to provide a plaintiff relief from the uncertainty and insecurity with respect to rights, duties, status, and other legal relations.” Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 705 (2002). See Oxford v. Oxford Water Co., 391 Mass. 581, 584-85 (1984). An actual controversy exists when there is “[a] real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.” Gay & Lesbian Advocates & Defenders v. Attorney Gen, 436 Mass. 132, 134 (2002), quoting Bunker Hill Distrib., Inc. v. Dist. Attorney for the Suffolk Dist, 376 Mass. 142, 144 (1978).
In asserting that the plaintiff has no definite interest to be protected because he has yet to sell the Property and trigger their right to share in its appreciation, the defendants misconstrue the meaning of “definite interest” in the context of declaratory judgment. The plaintiff has a definite interest in the equity of his Property because he has an ownership interest in it. Both parties are claiming rights in the Property’s equity, and these antagonistic claims will “almost immediately and inevitably lead to litigation.” Gay & Lesbian Advocates & Defenders, 436 Mass, at 134. The shared appreciation provision will be triggered by a sale of or an additional encumbrance on the Property;[2] and, in either event, the defendants claim that they should receive $65,000. The plaintiff counters that paying the defendants $65,000 would amount to more than a two thousand percent return on the initial $3,067 loan. Given the amount of money at stake and the all-or-nothing nature of the probable remedy, this controversy most likely will be resolved sooner or later in the courts. Thus, it is prudent to address the question now. Accordingly, the court will not dismiss the equitable counts and the cognate G.L.c. 93A claim for lack of ripeness.
B. Violation of Criminal Usury Statute (G.L.c. 271, §49)
The plaintiff seeks a declaration that the Promissory Note and Wrap-around Mortgage are void because they violate the criminal usury statute, G.L.c. 271, §49, which prohibits the charging of interest greater than twenty per cent per annum unless the lender first informs the Attorney General of his/her intention to charge such a greater rate.[3] He maintains that the Promissory Note and Wrap-around Mortgage violate the usury statute because the shared appreciation provision qualifies as “interest and expenses”[4] on the $3,067 loan, being a sum “charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan.” G.L.c. 271, §49(a).
*575 The plaintiff has the burden of proving the illegality he alleges. Provident Cooperative Bank v. James Talcott Inc., 358 Mass. 180, 191 (1970). The criminal usury statute generally has been applied to loans that, on their face, contain a yearly interest rate exceeding twenty percent. See Beach Assocs. v. Fauser, 9 Mass.App.Ct. 386, 387 (1980) (court found violation of criminal usuiy statute when plaintiffs were obligated to pay one and one-half percent per month interest, plus a finder’s fee of one-half percent per month, i.e., twenty-four percent per year); Schwartz v. Levensailor, Suffolk Superior Court Civil No. 015830 (October 7, 2002) (Troy, J.) (15 Mass. L. Rptr. 177) (note that provided for an interest rate of twenty-eight percent was above the statutory maximum limit). Massachusetts courts also have determined that the “interest and expenses” calculation under G.L.c. 271, §49(a) includes default provisions that trigger additional interest payments, mortgage brokers’ fees, and attorneys fees. See In re Tavares, 298 B.R. 195, 203 (Bankr. Mass. 2003); In re Rolfe, 25 B.R 89, 94 (Bankr. Mass. 1982); Begelfer v. Negarian, 381 Mass. 177, 185-86 (1980). Whether a loan can be rendered usurious by an agreement that the lender shall receive a share in the net proceeds received from the sale of a premises, however, is a question of first impression in Massachusetts.[5]
In determining this question, an examination of the policies underljnng the criminal usury statute and shared appreciation agreements is instructive. The governor recommended passage of the criminal usury law “to provide an effective tool against organized crime and the vicious offense of loansharking,” Begelfer, 381 Mass, at 182, quoting Message of the Governor, 1970 House Doc. No. 5439, at 3; see Beach Assocs., 9 Mass.App.Ct. at 393; the law was “designed to protect the necessitous debtor from outrageous demands by lenders,” Begelfer, 381 Mass, at 182. By contrast, shared appreciation agreements “allow moderate income households to qualify for larger loans by reducing their fixed monthly mortgage payments and ... [at the same time] protect the lender from unanticipated inflation.” See Ronald Friend, “Shared Appreciation Mortgages,” 34 Hastings L.J. 329, 335-36 (1982). A mortgage vehicle that affords moderate-income borrowers and lenders a greater degree of flexibility in fashioning loan arrangements is sound public policy. Indeed, a number of courts have upheld the practice of federal agencies who, in exchange for the writing down or restructuring of debt, have required cash-strapped borrowers to sign shared appreciation agreements obligating them to repay as much as fifty percent, see Israel v. U.S. Dept. of Agriculture, 282 F.2d 521 (7th Cir. 2002); In re Tunnissen, 216 B.R. 834 (Bank. S.D. 1996), or even seventy-five percent, see Pauly v. U.S. Dept of Agriculture, 348 F.3d 1143 (9th Cir. 2003); Stahl v. U.S. Dept of Agriculture, 327 F.3d 697 (8th Cir. 2003); In re Moncur, 1999 W.L. 33287727 (Bank. Idaho 1999), of any appreciation that accrued on their properties during the term of the agreements.
Furthermore, in order to be considered usurious, a loan must be “absolutely, not contingently, repayable.” 9 Williston on Contracts §20:17, p. 59. Payments that are not known to the lender or ascertainable by reasonable inquiry at the time of making the loan are excluded from the operation of the usury statute. G.L.c. 271, §49(a). At the time the parties contracted, it was impossible to predict future market conditions and what positive appreciation of the Property, if any, would materialize. Thus, the contingency of realized appreciation of the Property places the parties’ agreement without the scope of G.L.c. 271, §49.
Aside from his claim that the terms of the defendants’ loan were usurious, the plaintiff does not offer any legal or equitable reasons to invalidate the Promissory Note and Wrap-around Mortgage, which were the product of a good faith, arm’s length bargain. Having benefitted from a lower interest rate on the $3,067 loan, the disgruntled plaintiff now wishes to annul the shared appreciation provision because the Property has increased in value more than anticipated. With the benefit of hindsight, the provision may seem ill-advised at this point; but, at the loan’s inception, both parties took a gamble on the future of the real estate market. The defendants were (and remain) critically vulnerable to a drop in that market.
In sum, the Promissory Note and Wrap-around Mortgage are without the scope of the criminal usury statute as a matter of law. As a result, the dismissal of Counts I, II, and VII, insofar as they all are based on an alleged violation of that statute, is warranted.[6]

ORDER

For all the foregoing reasons, it is hereby ORDERED AND ADJUDGED that the defendants’ motion to dismiss be ALLOWED and that Counts I, II, and VII be DISMISSED.

An amendment to the Promissory Note replaced this language with a provision that stated:
Upon the sale of the premises securing the repayment of this Note the Maker shall pay to the Holder, in addition to the principal and interest as set font above, forty-eight (48) percent of the ‘Adjusted Increase in Value’. . . recognized upon resale of said Premises.
For purposes of this motion, however, the court will consider the provision contained in the Promissory Note prior to the amendment because those are the words stated in the complaint.

The Promissory Note states that the plaintiff must pay the defendants forty-eight percent of the net proceeds received from the resale of the Property. In the Promissory Note, a sale is defined as “any conveyance or alienation of the premises including any additional encumbrances, given by Maker [Comstock] and secured by a lien of any kind on the premises, except for the refinancing of senior debt.”

G.L.c. 271, §49(a) provides that:
Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the *576 equivalent rate for a longer or shorter period, shall be guilty of criminal usury.

G.L.c. 271, §49(a) defines “interest and expenses” as:
All sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry.

Other jurisdictions have addressed this issue with differing results. For instance, in Florida, profit participation provisions are expressly authorized by its usury statutes for loans exceeding $500,000. See FLA STAT. ANN. §687.03(4) (“If... a loan, . . . exceeds $500,000, then, for the purposes of this chapter, interest on that loan .. . shall not include the value of property charged, reserved, or taken as an advance or forbearance, the value of which substantially depends on the success of the venture in which are used the proceeds of that loan”); Bailey v. Harrington, 462 So.2d 861, 862 (Fla.Dist.Ct.App. 1985). In addition, in California, net proceeds agreements are allowed if the guaranteed interest rate charged on the loan, excluding the possible appreciation of the property, is materially less than the usurious rate of interest. See Thomassen v. Carr, 58 Cal. Rptr. 297, 300 (Cal.Ct.App. 1967). On the other hand, shared appreciation agreements where the total interest returned would exceed the statutory usurious interest rate are disallowed in other states. See, e.g., Grotjohn v. JEM Fin, Inc., 12 S.W.3d 859, 876 (Tex.Ct.App. 2000) (“When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest which may not exceed the statutory maximum, regardless of the form of the transaction”).

Ordinarily, when an action for declaratory judgment is denied on the merits, the action should not be dismissed but, rather, the parties’ rights should be declared. Attorney General v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976). “However, action on a motion to dismiss under rule 12(b)(6) does not relate to the merits." Wallerstein v. Board of Bar Examiners, 414 Mass. 1008, 1009 (1993).